IN THE UNITED STATES BANKRUPTCY COURT
NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

| | |
|---|---|
| IN RE: | CASE NO.: 11-66826-JRS |
| ATLANTA GREENSPACE INITIATIVE, LLC, | CHAPTER 11 |
| Debtor. | |

## NOTICE OF HEARING

**PLEASE TAKE NOTICE** that CF Southeast, LLC ("CFS") has filed a Motion to Dismiss Chapter 11 Case for Cause and Bad Faith Pursuant to 11 U.S.C. § 1112 (the "Motion") with the Court in the above-styled case.

**PLEASE TAKE FURTHER NOTICE** that the Court will hold a hearing on the Motion in **Courtroom 1404, U.S. Courthouse, 75 Spring Street, SW, Atlanta, Georgia on September 27, 2011 at 1:30 p.m.**

Your rights may be affected by the Court's ruling on these pleadings. You should read these pleadings carefully and discuss them with your attorney, if you have one in this bankruptcy case. (If you do not have an attorney, you may wish to consult one.) If you do not want the Court to grant the relief sought in these pleadings or if you want the Court to consider your views, then you and/or your attorney must attend the hearing. You may also file a written response to the pleading with the Clerk at the address stated below, but you are not required to do so. If you file a written response, you must attach a certificate stating when, how and on whom (including addresses) you served the response. Mail or deliver your response to the Clerk. The address of the **Clerk's Office is: Clerk, U.S. Bankruptcy Court, 1340 Russell Federal Building, 75 Spring Street, SW, Atlanta, Georgia 30308.** You must also mail a copy of your response to the undersigned at the address stated below.

If a hearing on the Motion cannot be held within thirty (30) days, CFS waives the requirement for holding a preliminary hearing within thirty (30) days of filing the motion and agrees to a hearing on the earliest possible date. CFS consents to the automatic stay remaining in effect until the Court orders otherwise.

Dated:  **August 19, 2011.**

/s/ Ron C. Bingham, II
RON C. BINGHAM, II
Georgia State Bar No. 057240

For the Firm of
STITES & HARBISON, PLLC
303 Peachtree Street, N.E.
2800 SunTrust Plaza
Atlanta, Georgia  30308
(404) 739-8800 – Telephone
(404) 739-8870 – Facsimile
rbingham@stites.com
Attorneys for CF Southeast, LLC, Successor
in interest to United Community Bank

IN THE UNITED STATES BANKRUPTCY COURT
NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

| | |
|---|---|
| IN RE: | CASE NO.: 11-66826-JRS |
| ATLANTA GREENSPACE INITIATIVE, LLC, | CHAPTER 11 |
| Debtor. | |

## MOTION TO DISMISS CHAPTER 11 CASE FOR CAUSE AND BAD FAITH PURSUANT TO 11 U.S.C. § 1112

COMES NOW, CF SOUTHEAST, LLC, SUCCESSOR IN INTEREST TO UNITED COMMUNITY BANK ("CFS"), a creditor and party in interest in the above-styled case, and by and through its counsel, files this Motion to Dismiss For Cause and Bad Faith Pursuant to 11 U.S.C. § 1112 (the "Motion"). In support of its Motion, CFS respectfully shows this Court as follows:

### Jurisdiction and Venue

1.

ATLANTA GREENSPACE INITIATIVE, LLC (the "Debtor") filed its voluntary petition for relief under Chapter 11 of the Bankruptcy Code on June 6, 2011 (the "Petition Date"). The Debtor continues to operate its business and manage its properties as a debtor in possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code.

2.

The Bankruptcy Court has jurisdiction over this proceeding pursuant to 28 U.S.C. §§ 157 and 1334 and 11 U.S.C. § 1112.

250353:2:ATLANTA

3.

The Debtor's business operates in Fulton County, Georgia, and the real property representing the overwhelming majority of the Debtor's assets is located in Fulton County, Georgia.

**Relevant Facts**

4.

The Debtor is a land holding company that owns approximately 76.5 acres of vacant land abutting a landfill serving as its only asset. Upon information and belief, State Bank and Trust holds a first priority security interest in a tract representing approximately 65 acres of the real property. The remaining 11.5 acre tract is subject to the first priority security interest of CFS.

5.

CFS and the Debtor are parties to that certain Promissory Note and Deed to Secure Debt in the original principal amount of $100,000.00 (as amended or modified, "Note 1"). Note 1 is secured by real property consisting of approximately 3.2 acres in Land Lot 247, 17th District, Fulton County, Georgia, and more particular described in Exhibit "A" to the Deed to Secure Debt (the "Note 1 Collateral"). A true and correct copy of Note 1 and the Security Deed is attached hereto and incorporated herein by reference as Exhibit "1".

6.

As of the Petition Date, the total approximate amount outstanding under Note 1 including principal, accrued interest and late charges, but excluding attorneys' fees and other costs and charges that CFS is entitled to recover under Note 1, is $107,239.00.

7.

CFS and the Debtor are parties to that certain Promissory Note and Deed to Secure Debt in the original principal amount of $332,500.00 (as amended or modified, "Note 2"). Note 2 is

secured by real property consisting of 8.27 acres in Land Lot 247, 17th District, Fulton County, and being more particularly described in Exhibit "A" to the Deed to Secure Debt (the "Note 2 Collateral"). A true and correct copy of Note 2 is attached hereto and incorporated herein by reference as Exhibit "2".

8.

As of the Petition Date, the total approximate amount outstanding under Note 2 including principal, accrued interest and late charges, but excluding attorneys' fees and other costs and charges that CFS is entitled to recover under Note 2, is $355,408.81.

9.

The Security Deeds contain power of sale provisions authorizing CFS, in the event of a default, to sell the Note 1 Collateral and Note 2 Collateral (collectively, the "Collateral") to the highest bidder for cash at the usual place of conducting sales at the Courthouse in the county wherein the land lies, after first giving notice of the time, terms, and place of sale by advertisement once a week for four (4) consecutive weeks in the newspaper where Sheriff's sales are advertised in that county.

10.

The Debtor defaulted under the terms of Note 1 and Note 2 (collectively, the "Notes"). CFS declared the Notes to be in default and accelerated the balances due thereunder. CFS made demand for payment of the Notes, but the Debtor failed to make said payments.

11.

In accordance with the power of sale provisions contained in the Security Deeds, the Collateral, following notice and proper advertisement, was scheduled for a foreclosure sale to be held on June 7, 2011. The Debtor's bankruptcy petition was filed on June 6, 2011, the day before the foreclosure sale, thereby preventing the foreclosure sale from consummating.

12.

According to the Debtor's testimony at the Meeting of Creditors, the Collateral is 11.5 acres of vacant land valued at $45,000.00.  The Debtor thus has no equity in the Collateral.

13.

The Debtor's Statement of Financial Affairs and the Debtor's most recent Monthly Operating Report indicate that the Debtor has not received any income from the operation of its business in over two years.  In fact, Debtor has provided no evidence that it has operated anything other than a land holding company for approximately 76.5 acres of vacant, non-revenue producing land in Fulton County, Georgia.  Furthermore, the Debtor's representative testified at the Meeting of Creditors that it is not currently operating and is receiving no revenue.  Indeed, the Collateral is vacant land not capable of generating revenue for the Debtor.

14.

The Debtor's representative testified at the Meeting of Creditors that the bankruptcy case was filed because the Debtor's sole shareholder, Carl Drury, could no longer service the debt owed to CFS.

### Relief Requested

### I. Bad Faith

15.

A determination of bad faith is a question of fact and must be made on a case-by-case basis. *See In re Roan Valley, LLC*, 2009 Bank. LEXIS 4246 (Bankr. N.D. Ga. Nov. 25, 2009). While no particular test exists for determining if a case was filed in bad faith, courts have considered the following factors:

**(1) whether the debtor has few or no unsecured creditors;**

(2) whether there has been a previous bankruptcy petition by the debtor or a related entity;

(3) whether the prepetition conduct of the debtor has been improper;

(4) whether the petition effectively allows the debtor to evade court orders;

(5) whether there are few debts to non-moving creditors;

**(6) whether the petition was filed on the eve of foreclosure;**

(7) whether the foreclosed property is the sole or major asset of the debtor;

**(8) whether the debtor has no ongoing business or employees;**

**(9) whether there is no possibility of reorganization;**

**(10) whether the debtor's income is sufficient to operate;**

(11) whether there was no pressure from non-moving creditors;

(12) whether reorganization essentially involves the resolution of a two-party dispute;

(13) whether a corporate debtor was formed and received title to its major assets immediately before the petition; and

**(14) whether the debtor filed solely to create the automatic stay**.

16.

In this case, six factors clearly favor a finding that the Debtor filed its petition in bad faith. First, the Debtor has few unsecured creditors. Schedule E shows only two unsecured creditors holding priority tax claims totaling approximately $40,000.00.  Schedule F indicates that there are only two unsecured, non-priority claims.  The largest unsecured claimant is owed $900,000.00; however, this is the claim of the Debtor's sole shareholder, Carl Drury, and thus is the claim of an insider and subject to subordination.  The second unsecured claim represents the amount owing to the Debtor's former attorney.  The total amount of all non-insider unsecured debts is just $80,000.00.

17.

Second, the Debtor filed its petition the day before a scheduled foreclosure sale on the Collateral, which constituted a significant portion of the Debtor's assets at the time of the filing of the petition.

18.

Third, the Debtor has no ongoing business or employees.

19.

Fourth, there is no possibility that the Debtor can effectively reorganize. The Debtor has no cash flow and has not provided any concrete evidence, other than pure speculation on the status of the future real estate market, that its ability to service its debt obligations will improve.

20.

Fifth, the Debtor's unreported and unsubstantiated cash flow is clearly insufficient to successfully operate the business. To date, the Debtor has been unable to service the debt held by CFS. The Debtor's Statement of Financial Affairs reflects that the Debtor has not received income from the operation of its business, or any other source, in two years, if ever. Furthermore, the Debtor testified at the Meeting of Creditors that its sole shareholder could not continue to service the debt owed to CFS. Each of these factors signify that the Debtor does not and will not have sufficient income to operate the business.

21.

Finally, the Debtor filed this reorganization to obtain the protection of the automatic stay as evidenced by the fact that the Debtor filed the instant petition the day before the scheduled foreclosure sale of the Collateral.

250353:2:ATLANTA

22.

Accordingly, this Court should enter an order dismissing the Debtor's case for bad faith pursuant to 11 U.S.C. § 1112(b). In the event this Court decides that the Debtor's case was not filed in bad faith, this Court may still dismiss the Debtor's case for cause.

## II.  For Cause

23.

A bankruptcy court has broad discretion under 11 U.S.C. § 1112(b) to dismiss a Chapter 11 case for cause. *In re Lumber Exchange Bldg. Ltd. Partnership*, 968 F.2d 647, 648 (8th Cir.1992).

24.

Section 1112(b)(4) provides a range of scenarios which tend to indicate the existence of cause. Pertinent to the case at hand, section 1112(b)(4)(A) states that the term "cause" includes "substantial and continuing loss to or diminution of the estate and the absence of a reasonable likelihood of rehabilitation." Section 1112(b)(4)(A)  requires a two-part inquiry: (1) the Court must determine whether there has been a substantial loss to or diminution of the estate; and (2) the Court must determine whether there is an absence of a reasonable likelihood of rehabilitation. The purpose behind section 1112(b)(4)(A) paints the perfect context; Congress wanted to "preserve estate assets by preventing the debtor in possession from gambling on the enterprise at the creditor's expense when there is no hope of rehabilitation." *In re Roan Valley, LLC*, 2009 Bank. LEXIS 4246 at *6.

25.

First, this Court must determine whether there has been a substantial loss to or diminution of the estate. *Id.* To satisfy this portion of section 1112(b)(4)(A), the movant must show that the

debtor continues to incur losses or maintains a negative cash flow position after the filing of the bankruptcy petition. *Id.*

26.

In this case, the Debtor has suffered substantial losses since the filing of the bankruptcy estate.  As of the Petition Date, the amount owing to CFS is approximately $462,647.81.  The Statement of Financial Affairs indicates that no new income is being generated to service the debt held by CFS, and the Debtor has provided no evidence that its financial situation will change.  The Collateral securing CFS's debt will continue to diminish in value as the case continues. Accordingly, this Court should find that there has been a substantial loss to or diminution to the estate to satisfy Section 1112(b)(4)(A).

27.

Second, this Court must find an absence of a reasonable likelihood of rehabilitation. *Id.* Rehabilitation does not merely equate to reorganization, or even the likelihood of confirming a Chapter 11 plan. *Id.* Instead, in this context, the phrase rehabilitation means "to put back in good condition; re-establish on a firm, sound basis." *Id.* (quoting *In re Fall*, 405 B.R. 863, 867 (Bankr. N.D. Ohio 2008)).

28.

As of the Petition Date, the Debtor has no equity in the Collateral and no hope of servicing the loan held by CFS. The Collateral will continue to diminish in value.  Furthermore, the Debtor is showing no indication that its cash flow problems will improve.  Without any prospect of steady income in the future, CFS cannot envision a successful reorganization of the Debtor's business or that the Debtor has any real expectation of maintaining adequate protection for CFS's Collateral.  Accordingly, this Court should find that there is a clear absence of a reasonable likelihood of rehabilitation and dismiss the case.

250353:2:ATLANTA

WHEREFORE, CFS respectfully requests that this Court issue an Order:

A.      Dismissing the Debtor's case; and

B.      Granting such other and further relief as this Court deems just and appropriate.

RESPECTFULLY SUBMITTED this **19th** day of **August, 2011**.

                                        /s/ Ron C. Bingham, II
                                        RON C. BINGHAM, II
                                        Georgia State Bar No. 057240

For the Firm of
STITES & HARBISON, PLLC
303 Peachtree Street, N.E.
2800 SunTrust Plaza
Atlanta, Georgia  30308
(404) 739-8800 – Telephone
(404) 739-8870 – Facsimile
rbingham@stites.com
Attorneys for CF Southeast, LLC, Successor
in Interest to United Community Bank

250353:2:ATLANTA

Borrowers Name  Atlanta Greenspace Initiative, LLC
Address           699 11th Street, Suite 100
                  Atlanta, GA 30318

LOAN NO. 7017720

## REAL ESTATE NOTE

$100,000.00

Marietta, Georgia
Date:  February 13, 2006

FOR VALUE RECEIVED, ATLANTA GREENSPACE INITIATIVE, LLC  (hereinafter referred to as "Maker"),  hereby promises to pay to the order of SOUTHERN NATIONAL BANK (hereinafter referred to as "Bank"); and any subsequent holder hereof, (being hereinafter referred to as "Holder"), without grace, at the office of Bank located at **200 Cherokee Street, Marietta, Georgia**, 30060 or at such other place as Holder may designate to Maker in writing from time to time, the principal sum of   ONE HUNDRED THOUSAND AND 00/100-------------Dollars, together with simple interest on so much thereof as is from time to time outstanding and unpaid, as follows:

Interest only at the rate per annum provided in Paragraph  B  below on the principal amount from time to time advanced and outstanding pursuant to that certain Construction Loan Agreement of even date herewith, between Maker and Bank, hereinafter called the "Loan Agreement", shall be payable as set forth below.  Accrued interest shall be payable on or before the  **15th** day of the next succeeding  month  commencing on  **March 15, 2006** , and continuing on the same day of each  month  thereafter to and including  **February 15, 2007**;  and then the entire unpaid principal balance hereof, together with all accrued but unpaid interest thereon, shall be due and payable on  February 15, 2007,  if not sooner paid.

☐ **A.**  Interest shall accrue at the fixed rate of           percent           per annum.

☒ **B.**  Interest shall accrue at the rate per annum which is  One  percent 1% in excess of the Prime Rate as hereinafter defined.  For the purposes of this Note, "Prime Rate" shall mean the rate announced from time to time by the **WALL STREET JOURNAL** as its Prime Rate.  In the event the **WALL STREET JOURNAL** ceases to announce a Prime Rate, then the rate shall be the rate announced from time to time by the Bank at its principal office in its sole discretion as its Prime Rate.  The Prime Rate is not necessarily the lowest interest rate available from Bank, and loans may be priced at, above or below the Prime Rate by Bank in its sole discretion.  If at any time or from time to time the Prime Rate increases or decreases, then the rate of interest in effect immediately prior to such increase or decrease in the Prime Rate shall be correspondingly increased or decreased effective on the date on which any such increase or decrease of the Prime Rate becomes effective.  In the event that Bank, during the term hereof, shall abolish or abandon the practice of publishing the Prime Rate, or should the same become unascertainable, Holder shall designate a comparable reference rate which shall be deemed to be the Prime Rate hereunder.  Interest shall be computed hereunder with respect to each day during the term of this Note by multiplying the maximum outstanding principal balance hereunder on that day by a daily interest factor, which daily interest factor shall be calculated (on the basis of a year of 360 days) by dividing the aforesaid interest rate per annum in effect on that day by 360.  Interest so computed shall accrue for each and every day (365 days per year, 366 days per leap Year) on which any indebtedness remains outstanding hereunder, including the day on which funds are initially advanced regardless of the time of day such advance is made, and including the day on which funds are repaid unless repayment in federal funds immediately available in Marietta, Georgia is received by Holder prior to the close of Bank's normal business day, Marietta, Georgia time.  As of the date of the Note, the Prime Rate is Seven **and One-Half** percent **7.50%** per annum, and accordingly, the effective rate of interest under this Note as of the date of this Note is Eight and One-Half percent **8.50%** per annum.

All payments of principal and interest shall be made in lawful money of the United States of America, which shall at the time of payment, be legal tender in payment of all debts and dues, public and private.

The Note may be prepaid in whole or in part, without the prior written consent of Holder, at any time without penalty, premium or additional interest.

In the event any payment under the loan documents shall become overdue for a period in excess of ten (10) days, a late charge of five cents for each dollar so overdue shall become immediately due and payable to cover the additional expenses incurred by Lender in handling delinquent payments.  In no event shall the late charge be more than $100.00.

The indebtedness evidenced by this Note and the obligations created hereby are secured by that certain Security Deed and Construction Loan Agreement (together with all other documents evidencing or securing or in any way relating to the indebtedness evidenced hereby, herein referred to collectively as the "Loan Documents") entered into this day between Maker and Bank concerning the property located in **Fulton** County, Georgia, being known as Land Lot 247, 17th District, and being more particularly described in the Security Deed; some of which Loan Documents are to be filed for record on or about the date hereof in the appropriate public records.

As security for the payment of this and any other liability of any or all of the Maker to the Holder, irrespective of the nature of such liability or the time it arises, the Maker hereby assigns, conveys, and grants a security interest to the Holder in all property of any and all of the Maker in or coming into the possession, control or custody of the Holder, or in which the Holder has or hereafter acquires a lien, security interest, or other right (including, but not limited to, balances, credits, deposits, accounts and monies).  The Maker agrees to furnish, upon demand, such additional collateral and to execute any appropriate documents related thereto, as may be deemed necessary by the Holder for its security.  The Maker further authorizes the Holder, without notice, to apply any indebtedness due or to become due from Holder to any or all of the Maker in satisfaction of any liability described in this paragraph.



The following events or conditions are defaults hereunder:

(1) Failure of Maker to pay any of their obligations hereunder when due or to perform any promise, obligation or agreement hereunder or under the Security Instrument;

(2) Any warranty, representation, or statement made or furnished to Payee by or on behalf of Maker in connection with this Note or any Security Instrument proves to have been false, incomplete or misleading in any material respect when made or furnished;

(3) Loss, theft, substantial damage, destruction, sale, encumbrance or other diminution in value of any Collateral, or the making or attempting to make, or any levy, seizure or attachment thereof;

(4) Death of any Maker who is a natural person, or death or withdrawal of any partner of any Maker which is a partnership, or dissolution, merger or consolidation of any Maker which is a corporation;

(5) Transfer of a substantial part of the property of any Maker;

(6) Sale, transfer or exchange, either directly or indirectly, of a controlling stock interest of any Maker which is a corporation;

(7) Maker's insolvency or making of any assignment for the benefit of creditors;

(8) The institution of proceedings by or against Maker alleging that it is insolvent or unable to pay its debts as they mature or appointment of a receiver for all or any part of the Collateral, or the rendering of any money judgment against Maker;

(9) Suspension of the operation of Maker's present business;

(10) The occurrence of any default under the Security Instrument or any other document or instrument evidencing obligations of Maker to Payee, whether now existing or hereafter arising; or

(11) Holder otherwise deems itself insecure with respect to repayment of the Note.

It is hereby expressly agreed that should any default be made in the payment of principal or interest as stipulated above, (including, without limitation, non-payment upon maturity), or should any default be made in the performance of any of the covenants or conditions contained in the Loan Documents, or any of them, then a default shall exist hereunder, and in such event the Principal indebtedness evidenced hereby, and any other sums advanced hereunder or under the Loan Documents, or any of them, together with all unpaid interest accrued thereon, shall, at the option of Holder and without notice to Maker, at once become due and payable and may be collected forthwith, regardless of the stipulated date of maturity, and the entire unpaid principal balance of this Note shall bear a default charge at a per annum rate equal to sixteen percent (16%) per annum as of the first day of the default until the Note is paid in full. In the event this Note, or any part thereof, is collected by or through an attorney at law, Maker agrees to pay all costs of collection including, but not limited to, attorney's fees equal to fifteen percent (15%) of the outstanding principal and interest.

Presentment for payment, demand, protest and notice of demand, protest and non-payment and all other notices are hereby waived by Maker. No failure to accelerate the debt evidenced hereby by reason of default hereunder, acceptance of a past due installment, or indulgences granted from time to time shall be construed (i) as a novation of this Note or as a reinstatement of the indebtedness evidenced hereby or as a waiver of such right of acceleration or of the right of Holder thereafter to insist upon strict compliance with the terms of this Note, or (ii) to prevent the exercise of such right of acceleration or any other right granted hereunder or by the laws of the State of Georgia; and Maker hereby expressly waives the benefit of any statute or rule of law or equity now provided, or which may hereafter be provided, which would produce a result contrary to or in conflict with the foregoing. No extension of the time for the payment of this Note or any installment due hereunder, made by agreement with any person now or hereafter liable for the payment of this Note shall operate to release, discharge, modify, change or affect the original liability of Maker under this Note, either in whole or in part unless Holder agrees otherwise in writing. This Note may not be changed orally, but only by an agreement in writing signed by the party against whom enforcement of any waiver, change, modification or discharge is sought.

Maker hereby waives and renounces for themselves, their heirs, successors and assigns, all rights to the benefits of any statute of limitations and any moratorium, reinstatement, marshalling, forbearance, valuation, stay, extension, redemption, appraisement, exemption and homestead now provided, or which may hereinafter be provided for by the laws of the United States of America and of any state thereof, both as to themselves and in and to all of their property, real and personal, against the enforcement and collection of the obligations assigns to Holder a sufficient amount to such homestead or exemption to deliver to Holder a sufficient amount of property or money set apart as exempt to pay the indebtedness evidenced hereby, or any renewal thereof, and does hereby appoint Holder the attorney in fact for Maker to claim any and all homestead exemptions allowed by Law.

This Note is intended as a contract under and shall be construed and enforceable in accordance with the laws of the State of Georgia.

Time is of the essence of this Note.

If from any circumstances whatsoever, fulfillment of any provision of this Note or of any other instrument evidencing or securing the indebtedness evidenced hereby, at the time performance of such provision shall be due, shall involve transcending the limit of validity presently prescribed by any applicable usury statute or any other applicable law, with regard to obligations of like character and amount, then, ipso facto, the obligation to be fulfilled shall

6/05

be reduced to the limit of such validity, so that in no event shall any exaction be possible under this Note or under any other instrument evidencing or securing the indebtedness evidenced hereby, that is in excess of the current limit of such validity, but such obligation shall be fulfilled to the limit of such validity.

As used herein, the terms "Maker" and "Holder" shall be deemed to include their respective heirs, successors, legal representatives and assigns, whether by voluntary action of the person, firm or entity is a Maker hereunder, then all references to "Maker" shall be deemed to refer equally to each of said persons, firms, or entites, all of whom shall be jointly and severally liable for all of the obligations of Maker hereunder.

**IN WITNESS WHEREOF,** Maker has caused this Note to be executed under seal by its duly authorized officers on the date first above written.

Signature of
Corporate Maker

Signature of
Partnership Maker

Atlanta Greenspace Initiative, LLC

By: _____

By: _____

Eric W. Ohlhausen, V. P.
By: _____

By: _____

Attest: _____

Attest: _____

(CORPORATE SEAL)

Signature(s) of
Individual Makers

By: _____

By: _____

Attest: _____

6/05

**AMENDMENT TO PROMISSORY NOTE
AND OTHER LOAN DOCUMENTS**

5080102330
3.2 Acres in LL 247, 17th Dist., Atlanta
Fulton County

STATE OF GEORGIA
COUNTY OF _____

THIS AMENDMENT, made as of the **15th** day of **February, 2008** by and between **Atlanta Greenspace Initiative, LLC** the "Borrower") and UNITED COMMUNITY BANK, formerly known as Southern National Bank, (together with its successors and assigns, the "Bank"), having an office at 200 Cherokee St., Marietta, Georgia  30060;

W I T N E S S E T H  T H A T:

WHEREAS, the Bank has previously made a certain loan (the "Loan") to the Borrower in the principal amount of up to **$100,000.00** evidenced by that certain Promissory Note dated **February 13, 2006** (the "Note") from the Borrower and payable to the order of the Bank; and

WHEREAS, the Borrower and the Bank desire to amend the Note and other Loan documents to reflect of record certain agreements between them as more particularly set forth herein below;

NOW, THEREFORE, for and in consideration of the said agreements, the Borrower and the Bank do hereby covenant and agree as follows:

1.    **Note Amended.**  The Note is hereby amended as follows [Check the applicable provisions]:

_____ A.  The face principal amount of the Note is hereby increased to


  **XXX**  B.  The maturity date is hereby extended to **August 15, 2008**
And
Interest shall be payable **monthly** beginning **March 15, 2008,** and continuing on the **15th** day of each consecutive month thereafter.

_____ C.  Commencing _____, the outstanding principal balance of the Note shall bear interest (absent default) as next set forth in Section A or Section B, as indicated by the Borrower's initials on the line beside the caption for the applicable section:

_____     **Section A.  Variable Rate**
Initials

The outstanding principal balance of the Note shall bear interest at an annual rate equal to the "Prime Rate," as that term is herein defined, plus (    %) percentage points.  The rate of interest earned on the Note shall change on the same date that the Prime Rate changes.

The "Prime Rate" shall mean the rate announced from time to time by the Bank at its main offices as the prime rate of the Bank. The Prime Rate in effect as of the close of business of each day

shall be the applicable rate for that day and for any succeeding non-business day or days of the Bank in determining the applicable interest rate. If the Prime Rate is discontinued as a standard or becomes unascertainable, the holder of the Note shall designate in writing to the Borrower a comparable reference rate which shall be deemed to be the Prime Rate hereunder. The Borrower acknowledges that the Prime Rate is not necessarily the best rate offered by the Bank to all its customers and that the Prime Rate may at times be greater or less than the rate of interest that the Bank makes available to its best commercial customers.

_____
Initials

**Section B.  Fixed Rate**

The outstanding principal balance of the Note shall bear interest at the rate of _____(_____%) percent per annum.

1.    Commencing with a payment on _____,_____, the indebtedness evidenced by the Note shall be due and payable in equal consecutive _____installments of principal and interest in the amount of $_____each, which installments shall continue on the _____ day of each _____month; and the entire outstanding principal balance of the Note, together with all then accrued and unpaid interest, shall be due and payable on the maturity date stated in the Note (as the same may have been extended as provided in paragraph 1.B. above).

2.    **Other Loan Documents Amended.**    All other documents evidencing or securing the Loan are hereby amended as necessary to reflect the changes hereinabove set forth.

3.    **Documents Remain in Effect.**  The Note and the other Loan Documents, as herein amended, remain in full force and effect.

IN WITNESS WHEREOF, the parties hereto have executed this Amendment under seal, as of the day and year first above written.

Borrower

Atlanta Greenspace Initiative, LLC

By:_____
     Carl M. Drury, III
     Principal

UNITED COMMUNITY BANK

By:_____
     Phillip Galbreath
     Vice President

(Bank Seal)

Page 2 of 2

## AMENDMENT TO PROMISSORY NOTE
## AND OTHER LOAN DOCUMENTS

5080102330
3.2 Acres in LL 247, 17th dist, Atlanta
Fulton County, GA

STATE OF GEORGIA
COUNTY OF **Cobb**

THIS AMENDMENT, made as of the 15th day of August 2008 by and
between Atlanta Greenspace Initiative, LLC (the "Borrower") and UNITED
COMMUNITY BANK, formerly known as Southern National Bank, (together with
its successors and assigns, the "Bank"), having an office at 635 Whitlock Ave,
Marietta, Georgia 30064;

W I T N E S S E T H   T H A T:

WHEREAS, the Bank has previously made a certain loan (the "Loan") to
the Borrower in the principal amount of up to $100,000.00 evidenced by that
certain Promissory Note dated   February 13, 2006  (the "Note") from the
Borrower and payable to the order of the Bank; and

WHEREAS, the Borrower and the Bank desire to amend the Note and
other Loan documents to reflect of record certain agreements between them as
more particularly set forth herein below:

NOW, THEREFORE, for and in consideration of the said agreements, the
Borrower and the Bank do hereby covenant and agree as follows:

1.      **Note Amended.**  The Note is hereby amended as follows
[Check the applicable provisions]:

_____ A.  The face principal amount of the Note is hereby increased to


\_XXX\_ B.  The maturity date is hereby extended to November 3, 2008
And
Interest shall be payable monthly beginning September 15th, 2008
and   continuing on the 15th day of each consecutive month thereafter.

_____ C.  Commencing _____, the outstanding principal balance of the Note shall bear interest (absent default) as next set forth in Section A or Section B, as indicated by the Borrower's initials on the line beside the caption for the applicable section:

_____
Initials

**Section A.  Variable Rate**

The outstanding principal balance of the Note shall bear interest at an annual rate equal to the "Prime Rate," as that term is herein defined, plus (    %) percentage points.  The rate of interest earned on the Note shall change on the same date that the Prime Rate changes.

The <u>"Prime Rate"</u> shall mean the rate announced from time to time by the Bank at its main offices as the prime rate of the Bank. The Prime Rate in effect as of the close of business of each day shall be the applicable rate for that day and for any succeeding non-business day or days of the Bank in determining the applicable interest rate.  If the Prime Rate is discontinued as a standard or becomes unascertainable, the holder of the Note shall designate in writing to the Borrower a comparable reference rate which shall be deemed to be the Prime Rate hereunder.  The Borrower acknowledges that the Prime Rate is not necessarily the best rate offered by the Bank to all its customers and that the Prime Rate may at times be greater or less than the rate of interest that the Bank makes available to its best commercial customers.

_____
Initials

**Section B.  Fixed Rate**

The outstanding principal balance of the Note shall bear interest at the rate of _____(_____%) percent per annum.

1.     Commencing with a payment on _____,_____, the indebtedness evidenced by the Note shall be due and payable in equal consecutive _____installments of principal and interest in the amount of $_____each, which installments shall continue on the _____ day of each _____month; and the entire outstanding principal balance of the Note, together with all then accrued and unpaid interest, shall be due and payable on the maturity date stated in the Note (as the same may have been extended as provided in paragraph 1.B. above).

2.    **Other Loan Documents Amended.**    All other documents evidencing or securing the Loan are hereby amended as necessary to reflect the changes hereinabove set forth.

3.    **Documents Remain in Effect.**    The Note and the other Loan Documents, as herein amended, remain in full force and effect.

IN WITNESS WHEREOF, the parties hereto have executed this Amendment under seal, as of the day and year first above written.

Borrower

Atlanta Greenspace Initiative, LLC

By: Carl M. Drury III
Principal

UNITED COMMUNITY BANK

By: Richard G. Ellis
Title: Senior Vice President

(Bank Seal)

Page 3 of 3

R11-19-08tr

## EXTENSION

UNREPAID AND AFFECTED LOANS:

Old Hollywood Rd/Sizemore Rd./Gun Club Rd./White Oak Ave Subdivision in Fulton County, Georgia

<u>Loan no</u>.        <u>Lot / Block</u>

5080102330        assorted properties in
                  Atlanta

## AMENDMENT TO PROMISSORY NOTE,
### WITH RATIFICATION OF GUARANTY

THIS AMENDMENT is made and entered into as of the ~~8th~~ day of ~~November, 2008,~~ by and between **Atlanta Greenspace Initiative, LLC**, a Georgia **Limited Liability Company** (the "<u>Borrower</u>"), and **UNITED COMMUNITY BANK** (the "<u>Bank</u>").

### Recitals

The Borrower is obligated to the Bank under that certain outstanding promissory note dated **February 13, 2006** (the Note) in the <u>initial</u> principal amount of **$ 100,000.00** (which principal amount may have heretofore been changed by amendment or by partial repayment) from the Borrower and held by the Bank. The Note evidences one or more loans or financial accommodations (individually, a Loan and collectively, the Loans) to the Borrower for the acquisition, development or improvement of one or more residential lots in **Fulton** County, Georgia (individually, a Lot and collectively, the Lots), which Loans and Lots are more particularly referenced hereinabove, which references are incorporated herein and made a part hereof by this reference.

The Borrower has requested that the Note be amended in certain respects, and the Bank has agreed as set forth herein below.

As used herein, the term <u>Note</u> shall mean the Note referred to hereinabove, as the same may have heretofore been, or herein is, modified, amended, renewed or extended. The Note, the security deed which secures the Note, and all other documents and instruments given to evidence, secure, govern, support or inform the Note or the Loans or any of them, as the same or any of them may have heretofore been, or herein or concurrently are, modified, amended, renewed or extended, are collectively referred to herein as the <u>Loan Documents</u>.

1

Separate loan numbers are internally assigned to the various Lots by the Bank solely for purposes of internal accounting and administration. The assignment of loan numbers has no bearing on the scope, interpretation or enforceability of the Note or the other Loan Documents.

<u>Agreements</u>

NOW, THEREFORE, for and in consideration of the foregoing recitals, and in consideration of the mutual covenants and agreements herein set forth, the Borrower and the Bank do hereby covenant and agree, and the Note is hereby amended, as follows:

**1.**
**Recitals Incorporated**

The foregoing recitals are incorporated herein and made a part hereof by this reference.

**2.**
**Note Amended**

INSTRUCTIONS:   CHECK EACH PARAGRAPH WHICH REFLECTS A CHANGE IN TERMS AND COMPLETE THE BLANKS IN THAT PARAGRAPH. DO <u>NOT</u> CHECK OR COMPLETE PARAGRAPHS WHICH DO NOT REFLECT A CHANGE IN TERMS.

The Note is hereby amended as follows:

☒    a.    <u>Maturity Date Extended</u>.  The maturity date of the Note is hereby extended to ▓▓▓▓▓▓▓▓▓▓▓▓

☒    b.    <u>Interest Rate Adjusted</u>.   Commencing as of the date of this Amendment, the outstanding principal balance of the Note shall bear interest (absent default) as next set forth:

INSTRUCTIONS:  CHECK AND COMPLETE THE APPLICABLE SECTION:

☒    <u>Variable Rate</u>.  The outstanding principal balance of the Note shall bear interest at an annual rate equal to the <u>Prime Rate</u>, as that term is herein defined, plus **two**       (▓▓▓▓) percentage points.  The rate of interest earned on the Note shall change on the same date that the Prime Rate changes.  As of the above-stated date of this Amendment, the Prime Rate is ▓▓▓▓ per annum, and consequently the initial rate of interest charged on this Note, and stated as simple interest, ▓▓▓▓percent per annum.

The <u>Prime Rate</u> shall mean the rate announced from time to time by the Bank at its main offices as the prime rate of the Bank. The Prime Rate in effect as of the close of

2

business of each day shall be the applicable rate for that day and for any succeeding non-business day or days of the Bank in determining the applicable interest rate. If the Prime Rate is discontinued as a standard or becomes unascertainable, the holder of the Note shall designate in writing to the Borrower a comparable reference rate which shall be deemed to be the Prime Rate hereunder. The Borrower acknowledges that the Prime Rate is not necessarily the best rate offered by the Bank to all its customers and that the Prime Rate may at times be greater or less than the rate of interest that the Bank makes available to other customers of the Bank.

Or

☐    Fixed Rate. The outstanding principal balance of the Note shall bear interest at the rate of _____ percent ( _____ %) per annum.

☒    c.    Minimum Rate. Anything contained in the Note or in the preceding <u>paragraph b.</u> of this Amendment to the contrary notwithstanding, the principal amount from time to time outstanding under the Note shall <u>in no event</u> accrue interest at a rate which is less than ▓▓▓▓▓▓▓▓▓▓▓ per annum. During any time in which the applicable (non-default) rate of interest, determined as set forth in the Note or in the preceding <u>paragraph b.</u> (if applicable), would otherwise be less than the rate specified in the immediately preceding sentence, the applicable (non-default) interest rate under the Note shall be deemed to equal the rate specified in the immediately preceding sentence.

☒    d.    Payments. The indebtedness evidenced by the Note shall henceforth be due and payable as next set forth:

INSTRUCTIONS: CHECK AND COMPLETE THE APPLICABLE SECTION:

☒    Interest Only. Installments of accrued and unpaid interest only shall be due and payable **Monthly**, beginning on ▓▓▓▓▓▓▓▓▓▓ and continuing on the **fifth (5th)** day of each succeeding **Month** thereafter, to and including **February 5, 2009**. The entire then outstanding principal balance of the Note, together with all then accrued and unpaid interest, shall be due and payable on ▓▓▓▓▓▓▓▓▓▓

Or

☐    Principal and Interest. Installments of principal and interest, in the initial amount of $ _____ computed as set forth herein below, shall be due and payable monthly, beginning on _____ and continuing on the _____ ( ) day of each succeeding month thereafter, to and including _____ All such

3

installments shall be applied first against accrued and unpaid interest and the balance shall be applied against principal.  The entire then outstanding principal balance of the Note, together with all then accrued and unpaid interest, shall be due and payable on         .

As of the date of this amendment and again as of each monthly payment date (each such date is referred to herein as a Payment Computation Date, the Bank shall compute the amount of the next monthly installment of principal and interest (other than the final installment) as that amount necessary to amortize the principal amount hereof outstanding on that Payment Computation Date, at the interest rate in effect as of that Payment Computation Date, over an amortization term equal to         months minus the number of months elapsed between the date of this Amendment and that Payment Computation Date (counting any partial month as a full month). The amount so computed on each Payment Computation Date shall be the effective payment amount for the next monthly installment of principal and interest (except that the final installment shall in all events consist of the entire then outstanding principal balance of the Note, together with all then accrued and unpaid interest).

Or

☐   Principal Plus Interest.  Installments of principal in the fixed principal amount of $       each, plus all then accrued and unpaid interest, shall be due and payable monthly, beginning on        and continuing on the        (     ) day of each succeeding month thereafter, to and including        ,. All such installments shall be applied first against accrued and unpaid interest and the balance shall be applied against principal.  The entire then outstanding principal balance of the Note, together with all then accrued and unpaid interest, shall be due and payable on         .

## 3.
## Miscellaneous

a.   Governing Law.  This Amendment and the Loan Documents are and shall be governed by and construed in accordance with the laws of the State of Georgia, and controlling federal law.

b.   Time of the Essence.  Time is of the essence of this Amendment and each of the Loan Documents.

c.   No waiver.  The Bank has not waived, and does not hereby expressly or implicitly waive, any existing obligation, breach, failure, default or event of default on the part of the Borrower,

4

whether currently known or unknown to the Bank, under the Note or any of the other Loan Documents.

    d.    <u>Change in Circumstances</u>. Any material, adverse event or change in the financial circumstances of the Borrower or any guarantor of the Note, or in the value, status or condition of any of the Lots or any improvements thereon, shall, in the judgment of the Bank as a prudent lender, constitute a default under the Note. Such material, adverse events and changes include (without limitation): the filing of a lien against any of the Lots; the commencement of a voluntary or involuntary bankruptcy proceeding by or against the Borrower or any guarantor of the Note; the appointment of a receiver for the assets of the Borrower or any guarantor of the Note; an assignment for the benefit of creditors made by the Borrower or any guarantor of the Note; the commencement of foreclosure proceedings against any assets of the Borrower or any guarantor of the Note; or the filing of a suit against the Borrower or any guarantor of the Note. The default provisions of this paragraph are in addition to, and not in substitution of, other default provisions set forth in the Loan Documents.

    e.    <u>Affirmation of Borrower's obligations, *etc*</u>. The Borrower hereby: (i) acknowledges and agrees that it remains fully liable for the timely payment of the full amount of the Note from time to time outstanding, including principal, interest and other amounts, and for the timely performance of the obligations of the Borrower under the Note and the other Loan Documents; and (ii) fully and unconditionally waives any and all defenses to payment and performance, any and all rights of set-off, and any and all counter-claims that the Borrower may have against the Bank or any predecessor-in-interest of the Bank, or may have with respect to the Note or the indebtedness evidenced thereby, or with respect to any of the other Loan Documents, or with respect to the Loans or any of them, that arise from any acts, omissions or circumstances occurring from the beginning of time to and including the date of this Amendment, whether the same be choate or inchoate, vested or not vested in the Borrower, or now known or unknown to Borrower; and (iii) reaffirms its continuing obligations of payment and performance under the Note and all other Loan Documents, to the same extent as if the Note and the other Loan Documents, as amended, were set forth in full herein.

    f.    <u>No Novation</u>. The parties acknowledge and agree that the within and concurrent agreements and amendments with respect to the Loans are not intended to create, and do not create, a novation with respect to the Loans or any of them, nor with respect to the Note or any of the other Loan Documents.

    g.    <u>Captions for Convenience</u>. The captions employed in this Amendment are provided merely for convenience and shall not limit the scope or effect of any provision of this Amendment.

    h.    <u>Severability</u>. The provisions of this Amendment are intended to be severable. If any provision of this Amendment is determined to be illegal, invalid or unenforceable, such illegality, invalidity or unenforceability shall not affect the legality, validity or enforceability of the remaining provisions of this Amendment.

    i.    <u>Documents Remain in Effect</u>. The Note and the other Loan Documents, as amended, all remain in full force and effect.

5

IN WITNESS WHEREOF, the Borrower and the Bank have executed this Amendment under seal, as of the day and year first above written.

<u>Borrower:</u>

**Atlanta Greenspace Initiative, LLC**

By: _____ (Seal)
Name:  **Carl M. Drury, III**
its:    **Manager**

<u>Bank:</u>

**United Community Bank**

By: _____
Name:  **Richard G. Ellis**
its:    **Senior Vice President**

(Bank Seal)

6

## Ratification of Guaranty

Each undersigned guarantor of the Loans and the Note (both as defined hereinabove) hereby consents and agrees to the within and foregoing agreements and understandings.

Each such guarantor: (i) acknowledges and agrees that the guarantor remains fully liable for the timely payment and performance of its obligations under the guarantor's guaranty of the Loans and the Note and the other Loan Documents (as defined hereinabove); and (ii) fully and unconditionally waives any and all defenses to payment and performance, any and all rights of set-off, and any and all counter-claims that the Borrower or such guarantor may have against the Bank or any predecessor-in-interest of the Bank, or may have with respect to the Note or the indebtedness evidenced thereby, or with respect to any of the other Loan Documents, or with respect to the Loans, that arise from any acts, omissions or circumstances occurring from the beginning of time to and including the date of this Amendment, whether the same be choate or inchoate, vested or not vested in the Borrower or such guarantor, or now known or unknown to the Borrower or such guarantor; and (iii) reaffirms such guarantor's continuing obligations of payment and performance under the aforesaid guaranty to the same extent as if it were set forth in full herein.

Given under the hand and seal of each of the undersigned, as of the day and year first above written.

_____ (Seal)
Name:    Carl M. Drury, III


_____ (Seal)
Name:


_____ (Seal)
Name:


_____ (Seal)
Name:

7

Note Amendment R3-9-09

# AMENDMENT TO PROMISSORY NOTE

**UNREPAID AND AFFECTED LOANS:**

Property Description (acreage, subdivision, etc.):

**Old Hollywood Rd, Sizemore Rd, Gun club Rd, White Oak Ave (3.2 acres total)**

Loan #          Lot #
5080102330      various
                parcels in Atl

THIS AMENDMENT is made and entered into as of the **5th** day of **March, 2009**, by and between **Atlanta Greenspace Initiative, LLC**, a Georgia **Limited Liability Company** (the "Borrower"), and **UNITED COMMUNITY BANK** (the "Bank").

### Recitals

The Borrower is obligated to the Bank under that certain outstanding promissory note dated **February 13, 2006** (the Note) in the initial principal amount of **$100,000.00** (which principal amount may have heretofore been changed by amendment or by partial repayment) from the Borrower and held   by the Bank.   The Note evidences one or more loans or financial accommodations (individually, a Loan and collectively, the Loans) to the Borrower for the acquisition, development or improvement of one or more residential lots in **Fulton** County, Georgia (individually, a Lot and collectively, the Lots), which Loans and Lots are more particularly referenced hereinabove, which references are incorporated herein and made a part hereof by this reference.



The Borrower has requested that the Note be amended in certain respects, and the Bank has agreed as set forth herein below.

As used herein, the term Note shall mean the Note referred to hereinabove, as the same may have heretofore been, or herein is, modified, amended, renewed or extended.  The Note, the security deed which secures the Note, and all other documents and instruments given to evidence, secure, govern, support or inform the Note or the Loans or any of them, as the same or any of them may have heretofore been, or herein or concurrently are, modified, amended, renewed or extended, are collectively referred to herein as the Loan Documents.

Note Amendment R3-9-09

Separate loan numbers are internally assigned to the various Lots by the Bank solely for purposes of internal accounting and administration. The assignment of loan numbers has no bearing on the scope, interpretation or enforceability of the Note or the other Loan Documents.

## Agreements

NOW, THEREFORE, for and in consideration of the foregoing recitals, and in consideration of the mutual covenants and agreements herein set forth, the Borrower and the Bank do hereby covenant and agree, and the Note is hereby amended, as follows:

### 1.
### RECITALS INCORPORATED

The foregoing recitals are incorporated herein and made a part hereof by this reference.

### 2.
### NOTE AMENDED

**INSTRUCTIONS:  CHECK EACH PARAGRAPH WHICH REFLECTS A CHANGE IN TERMS AND COMPLETE THE BLANKS IN THAT PARAGRAPH. DO <u>NOT</u> CHECK OR COMPLETE PARAGRAPHS WHICH DO NOT REFLECT A CHANGE IN TERMS.**

The Note is hereby amended as follows:

☒    a.    **Maturity Date Extended**.  The maturity date of the Note is hereby extended to **February 5, 2010**



☐    b.    **Note Amount Adjusted**.  The *original* Note amount is hereby        by            from                to              .

☒    c.    **Interest Rate Adjusted**.  Commencing as of the date of this Amendment, the outstanding principal balance of the Note shall bear interest (absent default) as next set forth:

INSTRUCTIONS: CHECK AND COMPLETE THE APPLICABLE SECTION:

☐    <u>Variable Rate</u>.  The outstanding principal balance of the Note shall bear interest at an annual rate equal to the <u>Prime Rate</u>, as that term is herein defined,        percentage points.  The rate of interest earned on the Note shall change on the same date that the Prime Rate changes.  As of the above-stated date of this Amendment, the Prime Rate is        % per annum, and consequently the initial rate of interest charged on this Note, and stated as simple interest, is        % percent per annum.

Note Amendment R3-9-09

The <u>Prime Rate</u> shall mean the rate announced from time to time by the Bank at its main offices as the prime rate of the Bank. The Prime Rate in effect as of the close of business of each day shall be the applicable rate for that day and for any succeeding non-business day or days of the Bank in determining the applicable interest rate. If the Prime Rate is discontinued as a standard or becomes unascertainable, the holder of the Note shall designate in writing to the Borrower a comparable reference rate which shall be deemed to be the Prime Rate hereunder. The Borrower acknowledges that the Prime Rate is not necessarily the best rate offered by the Bank to all its customers and that the Prime Rate may at times be greater or less than the rate of interest that the Bank makes available to other customers of the Bank.

<u>Or</u>

☒    <u>Fixed Rate</u>. The outstanding principal balance of the Note shall bear interest at the rate of **five and one half** percent (**5.50%**) *per annum*.

☐    d.    **Minimum Rate.** Anything contained in the Note or in the preceding <u>paragraph b.</u> of this Amendment to the contrary notwithstanding, the principal amount from time to time outstanding under the Note shall <u>in no event</u> accrue interest at a rate which is <u>less</u> than _ *per annum*. During any time in which the applicable (non-default) rate of interest, determined as set forth in the Note or in the preceding <u>paragraph b.</u> (if applicable), would otherwise be less than the rate specified in the immediately preceding sentence, the applicable (non-default) interest rate under the Note shall be deemed to equal the rate specified in the immediately preceding sentence.

☒    e.    <u>Payments</u>. The indebtedness evidenced by the Note shall henceforth be due and payable as next set forth:

INSTRUCTIONS: CHECK AND COMPLETE THE APPLICABLE SECTION:

☐    <u>Interest Only</u>. Installments of accrued and unpaid interest only shall be due and payable   , beginning on    and continuing on the    day of each succeeding    thereafter, to and including   . The entire then outstanding principal balance of the Note, together with all then accrued and unpaid interest, shall be due and payable on

<u>Or</u>

Note Amendment R3-9-09

☒ **Principal and Interest**. Installments of principal and interest, in the initial amount of **$817.08** computed as set forth herein below, shall be due and payable monthly, beginning on **April 5, 2009** and continuing on the **5th** day of each succeeding month thereafter, to and including **February 5, 2010** All such installments shall be applied first against accrued and unpaid interest and the balance shall be applied against principal. The entire then outstanding principal balance of the Note, together with all then accrued and unpaid interest, shall be due and payable on **February 5, 2010**.

As of the date of this amendment and again as of <u>each</u> monthly payment date (each such date is referred to herein as a <u>Payment Computation Date</u>, the Bank shall compute the amount of the <u>next</u> monthly installment of principal and interest (other than the final installment) as that amount necessary to amortize the principal amount hereof outstanding on that Payment Computation Date, at the interest rate in effect as of that Payment Computation Date, over an amortization term equal to <u>180</u> months <u>minus</u> the number of months elapsed between the date of this Amendment and that Payment Computation Date (counting any partial month as a full month). The amount so computed on each Payment Computation Date shall be the effective payment amount for the <u>next</u> monthly installment of principal and interest (except that the final installment shall in all events consist of the entire then outstanding principal balance of the Note, together with all then accrued and unpaid interest).

**Or**



☐ **Principal Plus Interest**. Installments of principal in the fixed principal amount of $       each, <u>plus</u> all then accrued and unpaid interest, shall be due and payable monthly, beginning on       and continuing on the       day of each succeeding month thereafter, to and including       ,. All such installments shall be applied first against accrued and unpaid interest and the balance shall be applied against principal. The entire then outstanding principal balance of the Note, together with all then accrued and unpaid interest, shall be due and payable on       .

☐ f.  **Lot Release**. The parties covenant and agree that the release price for a lot securing the loan is       , plus, at the option of the Bank, any accrued interest, default interest and other charges which are then due and owing..

Note Amendment R3-9-09

## 3.

### MISCELLANEOUS

a.   <u>Governing Law</u>.  This Amendment and the Loan Documents are and shall be governed by and construed in accordance with the laws of the State of Georgia, and controlling federal law.

b.   <u>Time of the Essence</u>.  Time is of the essence of this Amendment and each of the Loan Documents.

c.   <u>No waiver</u>.  The Bank has not waived, and does not hereby expressly or implicitly waive, any existing obligation, breach, failure, default or event of default on the part of the Borrower, whether currently known or unknown to the Bank, under the Note or any of the other Loan Documents.

d.   <u>Affirmation of Borrower's obligations, *etc*</u>. The Borrower hereby: (i) acknowledges and agrees that it remains fully liable for the timely payment of the full amount of the Note from time to time outstanding, including principal, interest and other amounts, and for the timely performance of the obligations of the Borrower under the Note and the other Loan Documents; and (ii) fully and unconditionally waives any and all defenses to payment and performance, any and all rights of set-off, and any and all counter-claims that the Borrower may have against the Bank or any predecessor-in-interest of the Bank, or may have with respect to the Note or the indebtedness evidenced thereby, or with respect to any of the other Loan Documents, or with respect to the Loans or any of them, that arise from any acts, omissions or circumstances occurring from the beginning of time to and including the date of this Amendment, whether the same be choate or inchoate, vested or not vested in the Borrower, or now known or unknown to Borrower; and (iii) reaffirms its continuing obligations of payment and performance under the Note and all other Loan Documents, to the same extent as if the Note and the other Loan Documents, as amended, were set forth in full herein. 

e.   <u>No Novation</u>.   The parties acknowledge and agree that the within and concurrent agreements and amendments with respect to the Loans are not intended to create, and do not create, a novation with respect to the Loans or any of them, nor with respect to the Note or any of the other Loan Documents.

f.   <u>Captions for Convenience</u>.  The captions employed in this Amendment are provided merely for convenience and shall not limit the scope or effect of any provision of this Amendment.

Note Amendment R3-9-09

g.    Severability. The provisions of this Amendment are intended to be severable. If any provision of this Amendment is determined to be illegal, invalid or unenforceable, such illegality, invalidity or unenforceability shall not affect the legality, validity or enforceability of the remaining provisions of this Amendment.

h. Documents Remain in Effect. The Note and the other Loan Documents, as amended, all remain in full force and effect.

IN WITNESS WHEREOF, the Borrower and the Bank have executed this Amendment under seal, as of the day and year first above written.

Borrower:

Atlanta Greenspace Initiative, LLC

_____ (Seal)
Carl M. Drury, III
Manager


_____ (Seal)




Bank:

United Community Bank

_____
Richard G. Ellis
Senior Vice President



(Bank Seal)

Deed Book 41981 Pg 3169
Filed and Recorded Feb-16-2006 01:33pm
2006-0051699
Georgia Intangible Tax Paid $0.00
Juanita Hicks
Clerk of Superior Court
Fulton County, Georgia

AFTER RECORDING RETURN TO:
SHUPING, MORSE &ROSS, LLP
6259 RIVERDALE ROAD
RIVERDALE, GA 30274
06-53403/ATLANTA GREENSPACE INITIATIVE, LLC

## DEED TO SECURE DEBT

STATE OF GEORGIA
COUNTY OF CLAYTON

THIS INDENTURE, made the 13TH day of FEBRUARY, 2006, between ATLANTA GREENSPACE INITIATIVE, LLC, of the county of Fulton and state of Georgia, as party or parties of the first part, hereinafter called Grantor, and SOUTHERN NATIONAL BANK, 200 Cherokee Street, Marietta, Georgia 30060, a Georgia Banking Association, as party of the second part, hereafter called Grantee:

WITNESSETH, That Grantor, for and in consideration of the sum of Ten Dollars and 00/100 ----------($10.00) and other good and valuable consideration in hand paid at and before the sealing and delivery of these presents, the receipt whereof is hereby acknowledged, has granted, bargained, sold, aliened, conveyed and confirmed, and by these presents does grant, bargain, sell, alien, convey and confirm unto the said Grantee, its successors and assigns, the following described property, to wit:

All that tract or parcel of land lying and being in Land Lot 247 of the 17TH District, Fulton County, Georgia, being more particularly described in Exhibit "A" attached hereto and made a part hereof.

TO HAVE AND TO HOLD the said bargained premises with all and singular the rights, members and appurtenances thereto appertaining, including all fixtures and equipment now or hereafter attached to or used in connection with said property, to the only proper use, benefit and behoof of Grantee, its successors and assigns, in fee simple and Grantor, shall and will WARRANT AND FOREVER DEFEND the said premises, unto Grantee, its successors and assigns, against Grantor, and the heirs, executors and administrators or Grantor, and against all and every other person or persons (except as may be otherwise expressly stated herein).

This conveyance is a deed passing legal title pursuant to the laws of the State of Georgia governing loan or security deeds, and is not a mortgage, and upon payment of the debt hereby secured, including renewals and extensions, and all other and further indebtedness of Grantor to Grantee, this security deed shall be cancelled and surrendered pursuant thereto, the debt hereby secured in addition to that indicated below being evidenced by that promissory note dated February 13, 2006, made by Grantor to order of Grantee for the principal sum of $100,000.00 together with interest as provided in said note, the terms and conditions of which are hereby incorporated by reference into this deed. The final and last installment of principal and interest shall be due and payable on the 15th day of February, 2007.

It is the intention of this instrument to secure not only the indebtedness hereinabove described along with any and all renewals and extensions thereof, in whole or in part, but also any and an all other and further indebtedness now owing or which may hereafter be owing, however incurred, to Grantee, its successors and assigns, by Grantor and Grantor's successors in title, whether directly or indirectly as principal, endorser, guarantor or otherwise. If any portion of said indebtedness or any provision of this instrument shall be held invalid for any reason, it is the intent of the parties that such portion shall be severable, and such invalidity shall not affect the remainder of said debt or instrument. No release of any part of the property herein described or extension of all or any part of the indebtedness hereby secured, shall affect the personal liability of any person upon the indebtedness hereby secured, nor the priority of this instrument.

This conveyance is subject only to that certain deed to secure debt N/A.

Grantor represents and warrants that this deed when recorded shall not be subject to any other deed or encumbrance, other than as set out above. In the event of any default in the performance of any of the obligations of any prior security deed or lien, Grantee and assigns may make any payments or perform any acts necessary to relieve said default, and the cost thereof shall be added to the indebtedness hereby secured. Any such default in any prior security deed may, at the option of the Grantee herein or assigns, be deemed a default under the present instrument. Grantor herein hereby assigns and transfers unto Grantee and assigns all surplus funds, together with escrow funds and accounts for taxes or insurance which may come into or be in the hands of the holder of any prior security deed upon foreclosure of the same, hereby directing that the same be forthwith paid over to Grantee herein and its assigns upon the debt hereby secured.

Grantor covenants and agrees not to further encumber the property conveyed hereby, and not to increase the present amount due on any prior Deed to Secure Debt, either by renewal, extension or additional advance during any period of time while this instrument is in effect, without first obtaining the written consent of the Grantee herein, its successors or assigns; any violation of this provision, in addition to the other provisions of this instrument, shall constitute a default under the terms and conditions hereof. It is agreed that the Grantee shall be subrogated to the claims and liens of all parties whose claims or liens are discharged or paid with the proceeds of the loan secured hereby.

The Grantor covenants and agrees, so long as any indebtedness secured hereby shall remain unpaid, to keep the property and all improvements thereon in as good condition as now exists, natural wear and tear excepted, and also not to demolish, destroy, or remove any permanent structure now existing on the premises or make any alteration thereon that would constitute a structural change without the written consent of the Grantee; also, not to permit waste thereof or to carry on any illegal activities on said property; to pay all taxes and assessments that

5/04

may be liens upon said property, as they become due; and to keep the improvements on said property fully insured against loss by fire and other hazards as may, from time to time, be required by Grantee in amounts and companies and with such mortgage clause approved by Grantee, and shall deliver the policies of insurance and any renewals thereof to the said Grantee; and that any tax, assessment, prior lien or premium of insurance, not paid when due by Grantor may be paid by the Grantee, and any sum so paid shall be added to the amount of said principal debt as part thereof, shall draw interest from the time of said payment at the highest lawful rate, and shall, with interest, be covered by the security of this deed.

Extension of the time for payment or modification of amortization of the sums secured by this deed granted by Grantee to any successor in interest of Grantor shall not operate to release, in any manner, the liability of the original Grantor and Grantor's successors in interest. Grantee shall not be required to commence proceedings against such successor or refuse to extend time for payment or otherwise modify amortizations of the sums secured by this deed by reason of any demand made by the original Grantor and Grantor's successors in interest.

Any forbearance by Grantee in exercising any right or remedy hereunder, or otherwise afforded by applicable law, shall not be a waiver of or preclude the exercise of any such right or remedy. The procurement of insurance or the payment of taxes or other liens or charges by Grantee shall not be a waiver of Grantee's right to accelerate the maturity of the indebtedness secured by this deed Grantor waives all right to reasonable notice by Grantee of its intention to rely on the exact terms of this deed and the note secured hereby in the event that the parties hereto in the course of the execution of the loan contract evidenced by said deed and note, depart from the terms thereof any pay or receive money under such departure

IF ALL OR ANY PART OF THE PROPERTY OR AN INTEREST THEREIN IS SOLD OR TRANSFERRED BY GRANTOR WITHOUT GRANTEE'S PRIOR WRITTEN CONSENT, EXCLUDING (A) THE CREATION OF A LIEN OR ENCUMBRANCE SUBORDINATE TO THIS DEED, (B) THE CREATION OF A PURCHASE MONEY SECURITY INTEREST FOR HOUSEHOLD APPLIANCES, (C) A TRANSFER BY DEVISE, DESCENT OR BY OPERATION OF LAW UPON THE DEATH OF A JOINT TENANT OR (D) THE GRANT OF ANY LEASEHOLD INTEREST OF THREE YEARS OR LESS NOT CONTAINING AN OPTION TO PURCHASE, GRANTEE MAY, AT GRARNTEE'S OPTION, DECLARE ALL THE SUMS SECURED BY THIS DEED TO BE IMMEDIATELY DUE AND PAYABLE. Grantee shall have waived such option to accelerate if, prior to the sale or transfer, Grantee and the person to whom the property is to be sold or transferred reach an agreement in writing that the credit of such person is satisfactory to grantee and that the interest payable on the sums secured by this deed may be at such rate as Grantee shall request.

AND Grantor hereby further covenants and agrees that in case of any default in the payments required by the above described note or in the payment of other indebtedness hereby secured or in the due performance of any of the covenants herein expressed to be performed by Grantor or falsity or any representation herein contained, then and in that event, the entire amount of said principal indebtedness, together with any and all sums paid for account of Grantor in accordance with the provisions above set forth, shall at the option of Grantee, and without notice, then and thereby become and be due and payable forthwith, with accrued interest, and all expenses and cost of collection, including fifteen per centum of the amount due as attorney's fees, and the amount of such costs, expenses and fees shall be added to the amount of the debt hereby secured as part thereof, and as such sum shall also be covered by the security of this deed; and time is of the essence of this contract. All of the covenants and agreements set out in said note and any subsequent notes are hereby made a part of this instrument.

In consideration of the loan made Grantor by Grantee and as additional security hereunder, Grantor hereby assigns to Grantee the rents of the property, provided that Grantor shall, prior to default hereunder or abandonment of the property have the right to collect and retain such rents as they become due and payable.

Upon default hereunder or abandonment of the property, Grantee, in person, by agent or by judicially appointed receiver, shall be entitled to enter upon take possession of and manage the property and to collect the rents of the property, including those past due. All rents collected by Grantee of the receiver shall be applied first to payment of the costs of management of the property and collection of rents, including, but not limited to, receiver's fees, premiums on receiver's bonds and reasonable attorney's fees, and then to the sums secured by this deed. Grantee and the receiver shall be liable to account only for those rents actually received. Grantor hereby constitutes Grantee as Grantor's agent to declare the existence of a default hereunder, and Grantor hereby agrees that any tenant in said property or any renting agent in charge thereof shall be, and is hereby authorized when a default shall be so declared to exist, to pay any such rents to Grantee or its assigns.

In the event of default in the indebtedness hereby secured, either in due course or by acceleration as herein provided, or in the event of default in the performance of any of the obligations required of the Grantor by the terms of this deed, the Grantee shall be entitled to have a receiver appointed for the property herein described, in connection with or as a part of any proceeding to foreclose this deed or to enforce any of its terms or the collection of all or part of said debt and Grantor agrees to the appointment of such receiver without proof of insolvency or other equitable grounds and hereby appoints the Grantee as attorney in fact with authority to consent for the Grantor to the appointment of such receiver.

In case the debt hereby secured shall not be paid when it becomes due by maturity in due course, or by reason of a default as herein provided, Grantor hereby grants to Grantee and assigns, the following irrevocable power of attorney: To sell the said property or any part thereof at public auction, at the usual place for conducting sales at the Courthouse in the County where the land or any part thereof lies, in said State, to the highest bidder for cash, after advertising the time, terms and place of such sale once a week for the four consecutive weeks immediately preceding such sale (but without regard to the number of days) in the official organ published in the County where the land lies, or in the paper in which the Sheriff's advertisements for such County are published, all other notice being hereby waived by Grantor, and Grantee or any person on behalf of Grantee, or assigns may bid and purchase at such sale and may thereupon execute and deliver to the purchaser or purchasers at such sale a sufficient conveyance of said premises in fee simple, which conveyance shall contain recitals as to the happening of the default upon which the execution of the power of sale herein granted depends, and said recitals shall be presumptive evidence that all preliminary acts prerequisite to said sale and deed were in all things duly complied with, and Grantor hereby constitutes and appoints Grantee and assigns, the agent and attorney in fact of Grantor to make such recitals, and hereby covenants and agrees that the recitals so to be made by Grantee, or assigns, shall be binding and conclusive upon Grantor, and the heirs, executors, Administrators and assigns of Grantor, and that the conveyance to be made by Grantee, or assigns, (and in the event of a deed in lieu of foreclosure, then as to such conveyance, shall be effectual to bar all right, title and interest, and equity of redemption of Grantor, or the successors in interest of Grantor, in and to said premises, and Grantee or assigns, shall collect the proceeds of such sale, and after receiving therefrom the entire amount of principal and interest due together with all costs and expenses of sale and fifteen per centum of the aggregate amount due for attorney's fees, shall pay over any surplus to Grantor, or to the heirs or assigns or Grantor as provided by law. In case of a sale as hereinabove provided, Grantor, or any person in possession under Grantor, shall then become and be tenants holding over and shall forthwith deliver possession to the purchaser at such sale, or be summarily dispossessed, in accordance with the provisions of law applicable to tenants holding over.

5/04

The power and agency hereby granted are coupled with an interest and are irrevocable by death or otherwise and are granted as cumulative to the remedies for collection of said indebtedness provided by law.  This deed and the note or notes hereby secured shall be deemed and construed to be contracts executed and to be performed in Georgia.

IN WITNESS WHEREOF, Grantor has hereto set hand(s) and seal(s) the day and year first above written.

Signed, sealed and delivered

in the presence of:

_____
Witness

_____
Notary Public

Borrower: **ATLANTA GREENSPACE INITIATIVE**, LLC

_____
by:ERIC OHLHAUSEN

_____
by:

5/04

Deed Book 41981 Pg  313

### EXHIBIT "A"

TRACT 1: ALL THAT TRACT OR PARCEL OF LAND LYING AND BEING IN LAND LOT 247 OF THE 17TH DISTRICT OF FULTON COUNTY, GEORGIA, BEING MORE PARTICULARLY DESCRIBED AS FOLLOWS:

BEGINNING AT A POINT ON THE SOUTHWESTERLY RIGHT OF WAY OF GUN CLUB ROAD, ALSO KNOWN AS GUN CLUB DRIVE, 455 FEET NORTHWESTERLY AS MEASURED ALONG THE SOUTHWESTERLY RIGHT OF WAY OF GUN CLUB ROAD FROM THE CORNER FORMED BY THE INTERSECTION OF THE SOUTHWESTERLY RIGHT OF WAY OF GUN CLUB ROAD WITH THE NORTHWESTERLY RIGHT OF WAY OF SIZEMORE ROAD, SAID POINT BEING AT THE NORTHERN-MOST CORNER OF PROPERTY NOW OR FORMERLY OWNED BY SAMUEL L. BLUNT; THENCE NORTHWESTERLY ALONG THE SOUTHWESTERLY RIGHT OF WAY OF GUN CLUB ROAD 90 FEET TO THE NORTHEASTERN CORNER OF OTHER PROPERTY NOW OR FORMERLY OWNED BY JAMES C. SULLEN; THENCE SOUTHWESTERLY ALONG THE SOUTHEASTERLY LINE OF SAID SULLEN PROPERTY 150 FEET TO A POINT; THENCE SOUTHEASTERLY 90 FEET TO THE SOUTHWESTERLY CORNER OF THE AFORESAID BLUNT PROPERTY; THENCE NORTHEASTERLY ALONG THE NORTHWESTERLY LINE OF SAID BLUNT PROPERTY 150 FEET TO THE POINT OF BEGINNING, BEING IDENTIFIED AS TAX PARCEL 17-247-3-37-6.

TRACT 2: ALL THAT TRACT OR PARCEL OF LAND LYING AND BEING IN LAND LOT 247 OF THE 17TH DISTRICT, FULTON COUNTY, GEORGIA, BEING MORE PARTICULARLY DESCRIBED AS FOLLOWS:

BEGINNING AT A POINT ON THE SOUTH SIDE OF GUN CLUB DRIVE ONE HUNDRED FIFTY (150) FEET FROM THE INTERSECTION OF GUN CLUB ROAD AND SIZEMORE ROAD; THENCE WESTERLY ALONG THE SOUTH SIDE OF GUN CLUB DRIVE SEVENTY-FIVE (75) FEET; THENCE SOUTHERLY ONE HUNDRED FIFTY-FOUR (154) FEET, MORE OR LESS TO THE PROPERTY OF FLOYD AND ARMAGINE CARTER; THENCE EASTERLY SEVENTY-SIX & THREE TENTHS (76.3) FEET TO PROPERTY OF PAUL R. REYNOLDS; THENCE NORTHERLY ALONG THE WEST LINE OF REYNOLDS, STELL AND NEESE ONE HUNDRED FIFTY-FOUR & FIVE-TENTHS (154.5) FEET TO THE POINT OF BEGINNING. BEING ALSO KNOWN AS 1410 GUN CLUB DRIVE, N.W. ATLANTA, GEORGIA AND BEING FURTHER IDENTIFIED AS TAX PARCEL NO. 17-247-3-35-0.

TRACT 3: ALL THAT TRACT OR PARCEL OF LAND LYING AND BEING IN LAND LOT 247 OF THE 17TH DISTRICT OF FULTON COUNTY, GEORGIA AND BEING MORE PARTICULARLY DESCRIBED AS FOLLOWS:

Deed Book 41981 Pg  314

BEGINNING AT A POINT ON THE SOUTH SIDE OF GUN CLUB DRIVE TWO HUNDRED TWENTY-FIVE (225) FEET WEST FROM THE SOUTHWEST CORNER OF GUN CLUB DRIVE AND SIZEMORE ROAD AND RUNNING THENCE SOUTH ALONG THE WEST LINE OF PROPERTY NOW OR FORMERLY OWNED BY MARSH ONE HUNDRED FIFTY-FOUR (154) FEET, MORE OR LESS TO PROPERTY OF CARTER; THENCE WEST ALONG THE NORTH LINE OF SAID CARTER PROPERTY SEVENTY-FIVE (75) FEET; THENCE NORTH ONE HUNDRED FIFTY-FOUR (154) FEET, MORE OR LESS TO THE SOUTH SIDE OF GUN CLUB ROAD; RUN THENCE EASTERLY 75 FEET, MORE OR LESS, ALONG THE SOUTH SIDE OF GUN CLUB ROAD A DISTANCE OF 75 FEET TO THE POINT OF BEGINNING.  BEING KNOWN AS NO. 1412 GUN CLUB DRIVE, ATLANTA, GEORGIA AND FURTHER IDENTIFIED AS TAX PARCEL 17-247-3-34-3.

TRACT 4: ALL THAT TRACT OR PARCEL OF LAND LYING AND BEING IN LAND LOT 247 OF THE 17TH DISTRICT OF FULTON COUNTY, GEORGIA, MORE PARTICULARLY DESCRIBED AS FOLLOWS:

BEGINNING AT A POINT ON THE EASTERLY SIDE OF OLD HOLLYWOOD ROAD 992 FEET FROM THE CURB LINE OF ALVIN DRIVE, AS MEASURED ALONG OLD HOLLYWOOD ROAD AND FOLLOWING THE CURVATURE THEREOF, WHICH POINT IS ALSO LOCATED AT THE NORTHWEST CORNER OF PROPERTY NOW OR FORMERLY OWNED BY MRS. C.  C. GROOVER, EXECUTRIX; RUNNING THENCE EASTERLY ALONG THE NORTHERLY LINE OF SAID GROOVER PROPERTY 150 FEET TO AN IRON PIN; THENCE NORTHWESTERLY 40 FEET TO AN IRON PIN; THENCE WESTERLY ALONG THE SOUTHERLY LINE OF PROPERTY NOW OR FORMERLY OWNED BY C. E. HIX, AND FORMING AN INTERIOR ANGLE OF 94 DEGREES 30 MINUTES WITH THE LAST MENTIONED COURSE, 150 FEET TO AN IRON PIN ON THE EASTERLY SIDE OF OLD HOLLYWOOD ROAD; THENCE SOUTHERLY ALONG THE EASTERLY SIDE OF OLD HOLLYWOOD ROAD 40 FEET TO AN IRON PIN AND THE POINT OF BEGINNING.  BEING FURTHER IDENTIFIED AS TAX PARCEL NO. 17-247-02-045.

TRACT 5: ALL THAT TRACT OR PARCEL OF LAND LYING AND BEING IN LAND LOT 247 OF THE 17TH DISTRICT OF FULTON COUNTY, GEORGIA AND MORE PARTICULARLY DESCRIBED AS FOLLOWS:

BEGINNING AT A POINT ON THE EASTERLY SIDE OF OLD HOLLYWOOD ROAD 1082 FEET FROM THE CURB LINE OF ALVIN  DRIVE, AS MEASURED ALONG OLD HOLLYWOOD ROAD AND FOLLOWING THE CURVATURE THEREOF, WHICH POINT IS ALSO LOCATED AT THE NORTHWEST CORNER OF PROPERTY NOW OR FORMERLY OWNED BY C. E. HIX, AND RUNNING THENCE EASTERLY ALONG THE NORTHERLY LINE OF SAID HIX PROPERTY 150 FEET TO AN IRON PIN; THENCE

Deed Book 41981 Pg .315

SOUTHEASTERLY ALONG THE EASTERLY LINE OF SAID HIX PROPERTY, AND FORMING AN INTERIOR ANGLE OF 263 DEGREES 20 MINUTES WITH THE LAST MENTIONED COURSE 50 FEET TO AN IRON PIN; THENCE EASTERLY AT AN INTERIOR ANGLE OF 96 DEGREES 23 MINUTES WITH THE LAST MENTIONED COURSE 50 FEET TO AN IRON PIN; THENCE NORTHWESTERLY AN IN INTERIOR ANGLE OF 81 DEGREES 50 MINUTES WITH THE LAST MENTIONED COURSE 100 FEET TO AN IRON PIN; THENCE WESTERLY 200 FEET TO AN IRON PIN ON THE EASTERLY SIDE OF OLD HOLLYWOOD ROAD; THENCE SOUTHERLY ALONG THE EASTERLY SIDE OF OLD HOLLYWOOD ROAD 50 FEET TO AN IRON PIN AND THE POINT OF BEGINNING. BEING FURTHER IDENTIFIED AS TAX PARCEL NO. 17-247-2-43-5.

TRACT 6: ALL THAT TRACT OR PARCEL OF LAND LYING AND BEING IN LAND LOT 247 OF THE 17TH DISTRICT OF FULTON COUNTY, GEORGIA, AND MORE PARTICULARLY DESCRIBED AS FOLLOWS:

BEGINNING AT A POINT ON THE SOUTHERLY SIDE OF SIZEMORE PLACE 270 FEET WESTERLY FROM THE SOUTHWEST CORNER OF SIZEMORE PLACE AND SIZEMORE ROAD AND RUNNING THENCE WESTERLY ALONG THE SOUTHERLY SIDE OF SIZEMORE PLACE 85 FEET; THENCE SOUTHWESTERLY 151.5 FEET; THENCE SOUTHEASTERLY 100 FEET; THENCE NORTHERLY 150 FEET TO THE SOUTHERLY SIDE OF SIZEMORE PLACE AND THE POINT OF BEGINNING. BEING FURTHER DESCRIBED AS TAX PARCEL NO. 17-247-2-7-0.

TRACT 7: ALL THAT TRACT OR PARCEL OF LAND LYING AND BEING IN LAND LOT #247 OF THE 17TH DISTRICT, FULTON COUNTY, GEORGIA, AND MORE PARTICULARLY DESCRIBED AS FOLLOWS:

BEGINNING AT THE CORNER OF MRS. L. FAY BLANTON AND B. S. SMITH AND MILLER MYRICK, SOUTHEAST CORNER AND RUNNING THENCE ONE HUNDRED SIXTY-EIGHT (168) FEET NORTH ALONGSIDE THE PROPERTY OF B. S. SMITH AND MILLER MYRICK PROPERTY, THE PROPERTY OF HOLLYWOOD CEMETERY CORP; THENCE ONE HUNDRED AND NINETY-SIX (196) FEET WEST TO THE PROPERTY OF HOLLYWOOD CEMETERY CORP; THENCE ONE HUNDRED SIXTY-EIGHT (168) FEET TO THE PROPERTY OF MRS. L. FAY BLANTON PROPERTY; THENCE ONE HUNDRED NINETY-SIX (196) FEET TO THE POINT OF BEGINNING. BEING FURTHER IDENTIFIED AS TAX PARCEL NO. 17-247-2-47-6

TRACT 8: ALL THAT TRACT OR PARCEL OF LAND LYING AND BEING IN LAND LOT 247 OF THE 17TH DISTRICT OF FULTON COUNTY, GEORGIA, FRONTING 153 FEET ON THE WEST SIDE OF A 10-FOOT ALLEY BETWEEN HOLLYWOOD ROAD AND SIZEMORE ROAD AND RUNNING BACK 62.5 X

Deed Book 41981 Pg 316

185 X 75 FEET MORE OR LESS, IN A WESTERLY DIRECTION. BEING FURTHER DESCRIBED AS TAX PARCEL 17-247-2-59-1.

TRACT 9: ALL THAT TRACT OR PARCEL OF LAND LYING AND BEING IN LAND LOT 247 OF THE 17TH DISTRICT OF FULTON COUNTY, GEORGIA, MORE PARTICULARLY DESCRIBED AS FOLLOWS:

BEGINNING AT AN IRON PIN ON THE NORTHERLY SIDE OF WHITE OAK AVENUE (FORMERLY KNOWN AS SIZEMORE ROAD AND PRIOR TO THAT AS AN UNNAMED ROAD) 548 FEET SOUTHWESTERLY FROM THE NORTHWESTERLY CORNER OF ALVIN DRIVE AND GUN CLUB ROAD (SAID BEGINNING POINT BEING REFERRED TO IN PRIOR DEEDS AS BEING 515 FEET SOUTHWESTERLY FROM THE NORTHWEST CORNER OF SIZEMORE ROAD AND GUN CLUB ROAD), SAID BEGINNING POINT ALSO BEING AT THE SOUTHWESTERLY CORNER OF PROPERTY NOW OR FORMERLY OWNED BY WILLIAM M. DUCKETT, AND RUNNING THENCE SOUTHWESTERLY ALONG THE NORTHERLY SIDE OF WHITE OAK AVENUE 93 FEET TO AN IRON PIN AT THE SOUTHEASTERLY CORNER OF PROPERTY NOW OR FORMERLY OWNED BY LONZER & MINNIE LEE WHITE; THENCE NORTHERLY 100 FEET TO AN IRON PIN; THENCE NORTHWESTERLY 50 FEET TO AN IRON PIN; THENCE NORTHERLY 100 FEET TO AN IRON PIN; THENCE NORTHEASTERLY 70 FEET TO AN IRON PIN; THENCE SOUTHEASTERLY 200 FEET TO THE NORTH SIDE OF WHITE OAK AVENUE AND THE POINT OF BEGINNING. BEING ALSO KNOWN AS 2261 WHITE OAK AVENUE, N.W., AND MORE PARTICULARLY SHOWN AND DELINEATED ON A PLAT OF SURVEY FOR GRADY L. HARMON BY HAROLD L. BUSH AND ASSOCIATES, INC., ENGINEERS AND SURVEYORS, DATED 7/24/1967. BEING FURTHER DESCRIBED AS TAX PARCEL NO. 17-247-1-8-9.

TRACT 10: ALL THAT TRACT OR PARCEL OF LAND LYING AND BEING IN LAND LOT 247 OF THE 17TH DISTRICT OF FULTON COUNTY, GEORGIA, AND BEING MORE PARTICULARLY DESCRIBED AS FOLLOWS:

BEGINNING AT A POINT ON THE NORTH RIGHT OF WAY OF SIZEMORE PLACE TWO HUNDRED AND FIFTEEN (215) FEET FROM THE NORTHWEST CORNER OF SIZEMORE PLACE AND SIZEMORE ROAD, N.W.; THENCE RUNNING ALONG THE NORTH RIGHT OF WAY OF SIZEMORE PLACE IN A NORTHWESTERLY DIRECTION A DISTANCE OF FIFTY-FIVE (55) FEET; THEN EXTENDING BACK IN A NORTHERLY DIRECTION AN EVEN WIDTH OF FIFTY-FIVE (55) FEET, A DISTANCE OF ONE HUNDRED AND FIFTY (150) FEET. SUBJECT TO A RESERVATION OF A STRIP OF LAND FIVE (5) FEET IN WIDTH ACROSS THE SOUTHERLY LINE OF SAID PROPERTY FRONTING ON SIZEMORE PLACE. BEING FURTHER IDENTIFIED AS TAX PARCEL NUMBER 17-247-3-20-2.

Deed Book 41981 Pg 317

TRACT 11: ALL THAT TRACT OR PARCEL OF LAND LYING AND BEING IN
LAND LOT 247 OF THE 17TH DISTRICT OF FULTON COUNTY, GEORGIA
AND BEING A CERTAIN VACANT LOT LOCATED ON THE NORTHEAST
SIDE OF HOLLYWOOD ROAD AND FROM THE HOLLYWOOD CEMETERY
PROPERTY, COMMENCING AT A POINT ON THE NORTHEAST SIDE OF
HOLLYWOOD ROAD FORTY (40) FEET WESTERLY FROM THE
WESTERLY LINE OF PROPERTY NOW OR FORMERLY KNOWN AS THE
HOME PLACE AND PROPERTY OF MRS. J. W. BALL ON THE NORTHEAST
SIDE OF HOLLYWOOD ROAD AND EXTENDING THENCE IN A WESTERLY
DIRECTION ALONG THE NORTHEAST SIDE OF HOLLYWOOD ROAD
FIFTY (50) FEET; THENCE EXTENDING IN A NORTHEASTERLY
DIRECTION AN EVEN WIDTH OF FIFTY (50) FEET A DEPTH OF ONE
HUNDRED FIFTY (150) FEET, AND BEING AN EQUAL DISTANCE OF
FORTY (40) FEET WEST OF THE SAID WESTERLY LINE OF SAID MRS. J.
W. BALL HOME PLACE PROPERTY FOR THE ENTIRE DEPTH OF ONE
HUNDRED FIFTY (150) FEET;  BEING FURTHER IDENTIFIED AS TAX
PARCEL NO. 17-247-2-44-3.

Deed Book 41981 Pg 318
Juanita Hicks
Clerk of Superior Court
Fulton County, Georgia

GRANTOR: ATLANTA GREENSPACE INITIATIVE, LLC

LENDER:    SOUTHERN NATIONAL BANK

DATE OF SECURITY DEED: FEBRUARY 13, 2006

## WAIVER OF BORROWER'S RIGHTS

BY EXECUTION OF THIS PARAGRAPH, GRANTOR EXPRESSLY: (1) ACKNOWLEDGES THE RIGHT TO ACCELERATE THE DEBT AND THE POWER OF ATTORNEY GIVEN HEREIN TO LENDER TO SELL THE PREMISES BY NONJUDICIAL FORECLOSURE UPON DEFAULT BY GRANTOR WITHOUT ANY JUDICIAL HEARING AND WITHOUT ANY NOTICE OTHER THAN SUCH NOTICE AS IS SPECIFICALLY REQUIRED TO BE GIVEN UNDER THE PROVISIONS OF SAID DEED TO SECURE DEBT; (2) WAIVES ANY AND ALL RIGHTS WHICH GRANTOR MAY HAVE UNDER THE FIFTH AND FOURTEENTH AMENDMENTS TO THE CONSTITUTION OF THE UNITED STATES, THE VARIOUS PROVISIONS OF THE CONSTITUTION FOR THE SEVERAL STATES, OR BY REASON OF ANY OTHER APPLICABLE LAW TO NOTICE AND TO JUDICIAL HEARING PRIOR TO THE EXERCISE BY LENDER OF ANY RIGHT OR REMEDY HEREIN PROVIDED TO LENDER, EXCEPT SUCH NOTICE AS IS SPECIFICALLY REQUIRED TO BE PROVIDED IN SAID DEED TO SECURE DEBT AND ANY NOTICE REQUIRED BY OFFICIAL CODE OF GEORGIA ANNOTATED 44-14-162.1 THROUGH 44-14-162.4 (GA CODE ANNOTATED SECTION 67-1507 THROUGH 67-1510); (3) ACKNOWLEDGES THAT GRANTOR HAS READ THIS DEED AND ANY AND ALL QUESTIONS REGARDING THE LEGAL EFFECT OF SAID DEED AND ITS PROVISIONS HAVE BEEN EXPLAINED FULLY TO GRANTOR AND GRANTOR HAS BEEN AFFORDED AN OPPORTUNITY TO CONSULT WITH COUNSEL OF GRANTOR'S CHOICE PRIOR TO EXECUTING THIS DEED; (4) ACKNOWLEDGES THAT ALL WAIVERS OF THE AFORESAID RIGHTS OF GRANTOR HAVE BEEN MADE KNOWINGLY, INTENTIONALLY AND WILLINGLY BY GRANTOR AS PART OF A BARGAINED FOR LOAN TRANSACTION; (5) AGREES THAT GRANTOR'S RIGHT TO NOTICE SHALL BE LIMITED TO THOSE RIGHTS TO NOTICE PROVIDED BY THIS DEED AND NO OTHER; AND (6) AGREES THAT THE PROVISIONS HEREOF ARE INCORPORATED INTO AND MADE A PART OF THE SECURITY DEED.

READ AND AGREED BY GRANTOR:

ATLANTA GREENSPACE INITIATIVE   LLC

Signed, Sealed and delivered

in the presence of:

_By: ERIC OHLHAUSEN_

NOTARY PUBLIC

## CLOSING ATTORNEY'S AFFIDAVIT

RE: BORROWER(S):  ATLANTA GREENSPACE INITIATIVE, LLC

LENDER:      SOUTHERN NATIONAL BANK

DATE:        FEBRUARY 13, 2006

Before the undersigned attesting officer personally appeared the undersigned closing attorney, who having been first duly sworn according to law, states under oath as follows:

In closing the above loan, but prior to the execution of the Deed to Secure Debt and "Waiver of the Borrower's Rights" by the Borrower(s), I reviewed with and explained to the Borrower(s) the terms and provisions of the Deed to Secure Debt and particularly the provisions, thereof authorizing the Lender to sell the secured property by a nonjudicial foreclosure under the power of sale, together with the "Waiver of Borrower's Rights" and informed the Borrower(s) of Borrower's rights under the Constitution of the State of Georgia and the Constitution of the United States to notice and a judicial hearing prior to such foreclosure in the absence of a knowing, intentional and willing contractual waiver by Borrower(s) of Borrower's rights.  After said review with and explanation to Borrower(s), Borrower(s) executed the Deed to Secure Debt and "Waiver of Borrower's Rights."

Based on said review with and explanation to the Borrower(s) knowingly, intentionally and willingly executed the waiver of Borrower's constitutional rights to notice and judicial hearing prior to any such nonjudicial foreclosure.

CLOSING ATTORNEY

Sworn to and subscribed before me
on the date set forth above:

NOTARY PUBLIC

5/04

RECORDATION REQUESTED BY:
UNITED COMMUNITY BANK
MARIETTA COMMERCIAL LOANS
PO BOX 4177
MARIETTA, GA 30061

WHEN RECORDED MAIL TO:
UNITED COMMUNITY BANK
MARIETTA COMMERCIAL LOANS
PO BOX 4177
MARIETTA, GA 30061

SEND TAX NOTICES TO:
ATLANTA GREENSPACE INITIATIVE, LLC
699 11TH STREET, SUITE 100
ATLANTA, GA 30318

Deed Book 44669 Pg 225
Filed and Recorded Mar-20-2007 12:36pm
2007-0083026
Georgia Intangible Tax Paid $0.00
Cathelene Robinson
Clerk of Superior Court
Fulton County, Georgia

## MODIFICATION OF SECURITY DEED

THIS MODIFICATION OF SECURITY DEED dated February 15, 2007, is made and executed between ATLANTA GREENSPACE INITIATIVE, LLC, whose address is 699 11TH STREET, SUITE 100, ATLANTA, GA 30318 (referred to below as "Grantor") and UNITED COMMUNITY BANK, whose address is PO BOX 4177, MARIETTA, GA 30061 (referred to below as "Lender").

SECURITY DEED. Lender and Grantor have entered into a Security Deed dated February 13, 2006 (the "Security Deed") which has been recorded in FULTON County, State of Georgia, as follows:

RECORD ON FEBRUARY 16, 2006 DEED BOOK 41981, PAGE 310 IN THE REAL PROPERTY RECORDS OF FULTON COUNTY, GEORGIA.

REAL PROPERTY DESCRIPTION. The Security Deed covers the following described real property located in FULTON County, State of Georgia and is described as follows:

See EXHIBIT A, which is attached to this Modification and made a part of this Modification as if fully set forth herein.

The Real Property or its address is commonly known as APPROXIMATELY 3.2 ACRES LOCATED IN LAND LOT 247 OF THE 17TH DISTRICT , GA.

MODIFICATION. Lender and Grantor hereby modify the Security Deed as follows:

THE NOTE EVIDENCING THE INDEBTEDNESS WHICH THE SECURITY DEED ORIGINALLY SECURED HAS BEEN MODIFIED TO PROVIDE THAT THE PRINCIPAL AMOUNT OF THE INDEBTEDNESS NOW SECURED THEREUNDER IS $ 99,999.69 AND THE MATURITY DATE OR DATE OF LAST INSTALLMENT PAYMENT IS FEBRUARY 15, 2008 . IT IS THE INTENTION OF GRANTOR AND LENDER TO CREATE A PERPETUAL OR INDEFINITE SECURITY INTEREST IN THE REAL PROPERTY PURSUANT TO O.C.G.A. 44-14-80(b).

CONTINUING VALIDITY. Except as expressly modified above, the terms of the original Security Deed shall remain unchanged and in full force and effect and are legally valid, binding, and enforceable in accordance with their respective terms. Consent by Lender to this Modification does not waive Lender's right to require strict performance of the Security Deed as changed above nor obligate Lender to make any future modifications. Nothing in this Modification shall constitute a satisfaction of the promissory note or other credit agreement secured by the Security Deed (the "Note"). It is the intention of Lender to retain as liable all parties to the Security Deed and all parties, makers and endorsers to the Note, including accommodation parties, unless a party is expressly released by Lender in writing. Any maker or endorser, including accommodation makers, shall not be released by virtue of this Modification. If any person who signed the original Security Deed does not sign this Modification, then all persons signing below acknowledge that this Modification is given conditionally, based on the representation to Lender that the non-signing person consents to the changes and provisions of this Modification or otherwise will not be released by it. This waiver applies not only to any initial extension or modification, but also to all such subsequent actions.

NO NOVATION. This agreement shall not constitute a novation of the note, any security instrument, or any other loan documents.

GRANTOR'S REPRESENTATION AND WAIVER. Grantor represents and warrants that there is no default under the terms of the note, or the other loan documents (the "Loan Documents") evidencing the existing indebtedness secured by the Security Deed, and that Grantor knows of no event that has occurred which, but for the passage of time or the giving of notice, would constitute an event of default under the terms of the Loan Documents. Grantor waives and releases Lender from any and all claims which Grantor may have against Lender, its agents and assigns, with respect to the Loan Documents and the Security Deed, whether such claims are known or unknown, or arise under contract or in tort.

GRANTOR ACKNOWLEDGES HAVING READ ALL THE PROVISIONS OF THIS MODIFICATION OF SECURITY DEED AND GRANTOR AGREES TO ITS TERMS. THIS MODIFICATION OF SECURITY DEED IS DATED FEBRUARY 15, 2007.

IN WITNESS WHEREOF, THIS MODIFICATION HAS BEEN SIGNED BY THE UNDERSIGNED, WHO ACKNOWLEDGES A COMPLETED COPY HEREOF. THIS MODIFICATION IS GIVEN UNDER SEAL AND IT IS INTENDED THAT THIS MODIFICATION IS AND SHALL CONSTITUTE AND HAVE THE EFFECT OF A SEALED INSTRUMENT ACCORDING TO LAW.

Signed, Sealed and Delivered in the presence of:

X _____
Unofficial Witness    James Lloyd

_____
Notary Public,    Cobb    County

(NOTARY SEAL)

My Commission Expires: _____
ROBIN D. ALVAREZ
Notary Public, Cobb County, Georgia
My Commission Expires January 16, 2009

GRANTOR:

ATLANTA GREENSPACE INITIATIVE, LLC

By: _____ (Seal)
ERIC OF OTHMASEN, V.P. REAL ESTATE
DEV. of ATLANTA GREENSPACE
INITIATIVE, LLC

Carl "Chip" Drury III
Principal

Deed Book 44669 Pg 226

## MODIFICATION OF SECURITY DEED
### (Continued)

Loan No: 5080102330                                                                    Page 2

LENDER:

UNITED COMMUNITY BANK

X_____    (Seal)
Authorized Signer

LASER PRO Lending, Ver. 5.34.00.003  Copr. Harland Financial Solutions, Inc. 1997, 2007.  All Rights Reserved.   GA  L:\GFGNQMACR\LPL\G201.FC  TR-187585  PR-10

Deed Book 44669 Pg 227

## EXHIBIT "A"

TRACT 1: ALL THAT TRACT OR PARCEL OF LAND LYING AND BEING IN LAND LOT 247 OF THE 17TH DISTRICT OF FULTON COUNTY, GEORGIA, BEING MORE PARTICULARLY DESCRIBED AS FOLLOWS:

BEGINNING AT A POINT ON THE SOUTHWESTERLY RIGHT OF WAY OF GUN CLUB ROAD, ALSO KNOWN AS GUN CLUB DRIVE, 455 FEET NORTHWESTERLY AS MEASURED ALONG THE SOUTHWESTERLY RIGHT OF WAY OF GUN CLUB ROAD FROM THE CORNER FORMED BY THE INTERSECTION OF THE SOUTHWESTERLY RIGHT OF WAY OF GUN CLUB ROAD WITH THE NORTHWESTERLY RIGHT OF WAY OF SIZEMORE ROAD, SAID POINT BEING AT THE NORTHERN-MOST CORNER OF PROPERTY NOW OR FORMERLY OWNED BY SAMUEL L. BLUNT; THENCE NORTHWESTERLY ALONG THE SOUTHWESTERLY RIGHT OF WAY OF GUN CLUB ROAD 90 FEET TO THE NORTHEASTERN CORNER OF OTHER PROPERTY NOW OR FORMERLY OWNED BY JAMES C. SULLEN; THENCE SOUTHWESTERLY ALONG THE SOUTHEASTERLY LINE OF SAID SULLEN PROPERTY 150 FEET TO A POINT; THENCE SOUTHEASTERLY 90 FEET TO THE SOUTHWESTERLY CORNER OF THE AFORESAID BLUNT PROPERTY; THENCE NORTHEASTERLY ALONG THE NORTHWESTERLY LINE OF SAID BLUNT PROPERTY 150 FEET TO THE POINT OF BEGINNING, BEING IDENTIFIED AS TAX PARCEL 17-247-3-37-6.

TRACT 2: ALL THAT TRACT OR PARCEL OF LAND LYING AND BEING IN LAND LOT 247 OF THE 17TH DISTRICT, FULTON COUNTY, GEORGIA, BEING MORE PARTICULARLY DESCRIBED AS FOLLOWS:

BEGINNING AT A POINT ON THE SOUTH SIDE OF GUN CLUB DRIVE ONE HUNDRED FIFTY (150) FEET FROM THE INTERSECTION OF GUN CLUB ROAD AND SIZEMORE ROAD; THENCE WESTERLY ALONG THE SOUTH SIDE OF GUN CLUB DRIVE SEVENTY-FIVE (75) FEET; THENCE SOUTHERLY ONE HUNDRED FIFTY-FOUR (154) FEET, MORE OR LESS TO THE PROPERTY OF FLOYD AND ARMAGINE CARTER; THENCE EASTERLY SEVENTY-SIX & THREE TENTHS (76.3) FEET TO PROPERTY OF PAUL R. REYNOLDS; THENCE NORTHERLY ALONG THE WEST LINE OF REYNOLDS, STELL AND NEESE ONE HUNDRED FIFTY-FOUR & FIVE-TENTHS (154.5) FEET TO THE POINT OF BEGINNING. BEING ALSO KNOWN AS 1410 GUN CLUB DRIVE, N.W. ATLANTA, GEORGIA AND BEING FURTHER IDENTIFIED AS TAX PARCEL NO. 17-247-3-35-0.

TRACT 3: ALL THAT TRACT OR PARCEL OF LAND LYING AND BEING IN LAND LOT 247 OF THE 17TH DISTRICT OF FULTON COUNTY, GEORGIA AND BEING MORE PARTICULARLY DESCRIBED AS FOLLOWS:

Deed Book 44669 Pg 228

BEGINNING AT A POINT ON THE SOUTH SIDE OF GUN CLUB DRIVE TWO HUNDRED TWENTY-FIVE (225) FEET WEST FROM THE SOUTHWEST CORNER OF GUN CLUB DRIVE AND SIZEMORE ROAD AND RUNNING THENCE SOUTH ALONG THE WEST LINE OF PROPERTY NOW OR FORMERLY OWNED BY MARSH ONE HUNDRED FIFTY-FOUR (154) FEET, MORE OR LESS TO PROPERTY OF CARTER; THENCE WEST ALONG THE NORTH LINE OF SAID CARTER PROPERTY SEVENTY-FIVE (75) FEET; THENCE NORTH ONE HUNDRED FIFTY-FOUR (154) FEET, MORE OR LESS TO THE SOUTH SIDE OF GUN CLUB ROAD; RUN THENCE EASTERLY 75 FEET, MORE OR LESS, ALONG THE SOUTH SIDE OF GUN CLUB ROAD A DISTANCE OF 75 FEET TO THE POINT OF BEGINNING. BEING KNOWN AS NO. 1412 GUN CLUB DRIVE, ATLANTA, GEORGIA AND FURTHER IDENTIFIED AS TAX PARCEL 17-247-3-34-3.

TRACT 4: ALL THAT TRACT OR PARCEL OF LAND LYING AND BEING IN LAND LOT 247 OF THE 17TH DISTRICT OF FULTON COUNTY, GEORGIA, MORE PARTICULARLY DESCRIBED AS FOLLOWS:



BEGINNING AT A POINT ON THE EASTERLY SIDE OF OLD HOLLYWOOD ROAD 992 FEET FROM THE CURB LINE OF ALVIN DRIVE, AS MEASURED ALONG OLD HOLLYWOOD ROAD AND FOLLOWING THE CURVATURE THEREOF, WHICH POINT IS ALSO LOCATED AT THE NORTHWEST CORNER OF PROPERTY NOW OR FORMERLY OWNED BY MRS. C. C. GROOVER, EXECUTRIX; RUNNING THENCE EASTERLY ALONG THE NORTHERLY LINE OF SAID GROOVER PROPERTY 150 FEET TO AN IRON PIN; THENCE NORTHWESTERLY 40 FEET TO AN IRON PIN; THENCE WESTERLY ALONG THE SOUTHERLY LINE OF PROPERTY NOW OR FORMERLY OWNED BY C. E. HIX, AND FORMING AN INTERIOR ANGLE OF 94 DEGREES 30 MINUTES WITH THE LAST MENTIONED COURSE, 150 FEET TO AN IRON PIN ON THE EASTERLY SIDE OF OLD HOLLYWOOD ROAD; THENCE SOUTHERLY ALONG THE EASTERLY SIDE OF OLD HOLLYWOOD ROAD 40 FEET TO AN IRON PIN AND THE POINT OF BEGINNING. BEING FURTHER IDENTIFIED AS TAX PARCEL NO. 17-247-02-045.

TRACT 5: ALL THAT TRACT OR PARCEL OF LAND LYING AND BEING IN LAND LOT 247 OF THE 17TH DISTRICT OF FULTON COUNTY, GEORGIA AND MORE PARTICULARLY DESCRIBED AS FOLLOWS:

BEGINNING AT A POINT ON THE EASTERLY SIDE OF OLD HOLLYWOOD ROAD 1082 FEET FROM THE CURB LINE OF ALVIN DRIVE, AS MEASURED ALONG OLD HOLLYWOOD ROAD AND FOLLOWING THE CURVATURE THEREOF, WHICH POINT IS ALSO LOCATED AT THE NORTHWEST CORNER OF PROPERTY NOW OR FORMERLY OWNED BY C. E. HIX, AND RUNNING THENCE EASTERLY ALONG THE NORTHERLY LINE OF SAID HIX PROPERTY 150 FEET TO AN IRON PIN; THENCE

SOUTHEASTERLY ALONG THE EASTERLY LINE OF SAID HIX PROPERTY, AND FORMING AN INTERIOR ANGLE OF 263 DEGREES 20 MINUTES WITH THE LAST MENTIONED COURSE 50 FEET TO AN IRON PIN; THENCE EASTERLY AT AN INTERIOR ANGLE OF 96 DEGREES 23 MINUTES WITH THE LAST MENTIONED COURSE 50 FEET TO AN IRON PIN; THENCE NORTHWESTERLY AN IN INTERIOR ANGLE OF 81 DEGREES 50 MINUTES WITH THE LAST MENTIONED COURSE 100 FEET TO AN IRON PIN; THENCE WESTERLY 200 FEET TO AN IRON PIN ON THE EASTERLY SIDE OF OLD HOLLYWOOD ROAD; THENCE SOUTHERLY ALONG THE EASTERLY SIDE OF OLD HOLLYWOOD ROAD 50 FEET TO AN IRON PIN AND THE POINT OF BEGINNING.   BEING FURTHER IDENTIFIED AS TAX PARCEL NO. 17-247-2-43-5.

TRACT 6: ALL THAT TRACT OR PARCEL OF LAND LYING AND BEING IN LAND LOT 247 OF THE 17TH DISTRICT OF FULTON COUNTY, GEORGIA, AND MORE PARTICULARLY DESCRIBED AS FOLLOWS:



BEGINNING AT A POINT ON THE SOUTHERLY SIDE OF SIZEMORE PLACE 270 FEET WESTERLY FROM THE SOUTHWEST CORNER OF SIZEMORE PLACE AND SIZEMORE ROAD AND RUNNING THENCE WESTERLY ALONG THE SOUTHERLY SIDE OF SIZEMORE PLACE 85 FEET; THENCE SOUTHWESTERLY 151.5 FEET; THENCE SOUTHEASTERLY 100 FEET; THENCE NORTHERLY 150 FEET TO THE SOUTHERLY SIDE OF SIZEMORE PLACE AND THE POINT OF BEGINNING. BEING FURTHER DESCRIBED AS TAX PARCEL NO. 17-247-2-7-0.

TRACT 7: ALL THAT TRACT OR PARCEL OF LAND LYING AND BEING IN LAND LOT #247 OF THE 17TH DISTRICT, FULTON COUNTY, GEORGIA, AND MORE PARTICULARLY DESCRIBED AS FOLLOWS:

BEGINNING AT THE CORNER OF MRS. L. FAY BLANTON AND B. S. SMITH AND MILLER MYRICK, SOUTHEAST CORNER AND RUNNING THENCE ONE HUNDRED SIXTY-EIGHT (168) FEET NORTH ALONGSIDE THE PROPERTY OF B. S. SMITH AND MILLER MYRICK PROPERTY, THE PROPERTY OF HOLLYWOOD CEMETERY CORP; THENCE ONE HUNDRED AND NINETY-SIX (196) FEET WEST TO THE PROPERTY OF HOLLYWOOD CEMETERY CORP; THENCE ONE HUNDRED  SIXTY-EIGHT (168) FEET TO THE PROPERTY OF MRS. L. FAY BLANTON PROPERTY; THENCE ONE HUNDRED NINETY-SIX (196) FEET TO THE POINT OF BEGINNING.  BEING FURTHER IDENTIFIED AS TAX PARCEL NO. 17-247-2-47-6

TRACT 8: ALL THAT TRACT OR PARCEL OF LAND LYING AND BEING IN LAND LOT 247 OF THE 17TH DISTRICT OF FULTON COUNTY, GEORGIA, FRONTING 153 FEET ON THE WEST SIDE OF A 10-FOOT ALLEY BETWEEN HOLLYWOOD ROAD AND SIZEMORE ROAD AND RUNNING BACK 62.5 X

Deed Book 44669 Pg 229

185 X 75 FEET MORE OR LESS, IN A WESTERLY DIRECTION. BEING FURTHER DESCRIBED AS TAX PARCEL 17-247-2-59-1.

TRACT 9: ALL THAT TRACT OR PARCEL OF LAND LYING AND BEING IN LAND LOT 247 OF THE 17TH DISTRICT OF FULTON COUNTY, GEORGIA, MORE PARTICULARLY DESCRIBED AS FOLLOWS:

BEGINNING AT AN IRON PIN ON THE NORTHERLY SIDE OF WHITE OAK AVENUE (FORMERLY KNOWN AS SIZEMORE ROAD AND PRIOR TO THAT AS AN UNNAMED ROAD) 548 FEET SOUTHWESTERLY FROM THE NORTHWESTERLY CORNER OF ALVIN DRIVE AND GUN CLUB ROAD (SAID BEGINNING POINT BEING REFERRED TO IN PRIOR DEEDS AS BEING 515 FEET SOUTHWESTERLY FROM THE NORTHWEST CORNER OF SIZEMORE ROAD AND GUN CLUB ROAD), SAID BEGINNING POINT ALSO BEING AT THE SOUTHWESTERLY CORNER OF PROPERTY NOW OR FORMERLY OWNED BY WILLIAM M. DUCKETT, AND RUNNING THENCE SOUTHWESTERLY ALONG THE NORTHERLY SIDE OF WHITE OAK AVENUE 93 FEET TO AN IRON PIN AT THE SOUTHEASTERLY CORNER OF PROPERTY NOW OR FORMERLY OWNED BY LONZER & MINNIE LEE WHITE; THENCE NORTHERLY 100 FEET TO AN IRON PIN; THENCE NORTHWESTERLY 50 FEET TO AN IRON PIN; THENCE NORTHERLY 100 FEET TO AN IRON PIN; THENCE NORTHEASTERLY 70 FEET TO AN IRON PIN; THENCE SOUTHEASTERLY 200 FEET TO THE NORTH SIDE OF WHITE OAK AVENUE AND THE POINT OF BEGINNING. BEING ALSO KNOWN AS 2261 WHITE OAK AVENUE, N.W., AND MORE PARTICULARLY SHOWN AND DELINEATED ON A PLAT OF SURVEY FOR GRADY L. HARMON BY HAROLD L. BUSH AND ASSOCIATES, INC., ENGINEERS AND SURVEYORS, DATED 7/24/1967. BEING FURTHER DESCRIBED AS TAX PARCEL NO. 17-247-1-8-9.

TRACT 10: ALL THAT TRACT OR PARCEL OF LAND LYING AND BEING IN LAND LOT 247 OF THE 17TH DISTRICT OF FULTON COUNTY, GEORGIA, AND BEING MORE PARTICULARLY DESCRIBED AS FOLLOWS:

BEGINNING AT A POINT ON THE NORTH RIGHT OF WAY OF SIZEMORE PLACE TWO HUNDRED AND FIFTEEN (215) FEET FROM THE NORTHWEST CORNER OF SIZEMORE PLACE AND SIZEMORE ROAD, N.W.; THENCE RUNNING ALONG THE NORTH RIGHT OF WAY OF SIZEMORE PLACE IN A NORTHWESTERLY DIRECTION A DISTANCE OF FIFTY-FIVE (55) FEET; THEN EXTENDING BACK IN A NORTHERLY DIRECTION AN EVEN WIDTH OF FIFTY-FIVE (55) FEET, A DISTANCE OF ONE HUNDRED AND FIFTY (150) FEET. SUBJECT TO A RESERVATION OF A STRIP OF LAND FIVE (5) FEET IN WIDTH ACROSS THE SOUTHERLY LINE OF SAID PROPERTY FRONTING ON SIZEMORE PLACE. BEING FURTHER IDENTIFIED AS TAX PARCEL NUMBER 17-247-3-20-2.

Deed Book 44669 Pg 230

TRACT 11: ALL THAT TRACT OR PARCEL OF LAND LYING AND BEING IN
LAND LOT 247 OF THE 17TH DISTRICT OF FULTON COUNTY, GEORGIA
AND BEING A CERTAIN VACANT LOT LOCATED ON THE NORTHEAST
SIDE OF HOLLYWOOD ROAD AND FROM THE HOLLYWOOD CEMETERY
PROPERTY, COMMENCING AT A POINT ON THE NORTHEAST SIDE OF
HOLLYWOOD ROAD FORTY (40) FEET WESTERLY FROM THE
WESTERLY LINE OF PROPERTY NOW OR FORMERLY KNOWN AS THE
HOME PLACE AND PROPERTY OF MRS. J. W. BALL ON THE NORTHEAST
SIDE OF HOLLYWOOD ROAD AND EXTENDING THENCE IN A WESTERLY
DIRECTION ALONG THE NORTHEAST SIDE OF HOLLYWOOD ROAD
FIFTY (50) FEET; THENCE EXTENDING IN A NORTHEASTERLY
DIRECTION AN EVEN WIDTH OF FIFTY (50) FEET A DEPTH OF ONE
HUNDRED FIFTY (150) FEET, AND BEING AN EQUAL DISTANCE OF
FORTY (40) FEET WEST OF THE SAID WESTERLY LINE OF SAID MRS. J.
W. BALL HOME PLACE PROPERTY FOR THE ENTIRE DEPTH OF ONE
HUNDRED FIFTY (150) FEET;  BEING FURTHER IDENTIFIED AS TAX
PARCEL NO. 17-247-2-44-3.



Deed Book 44669 Pg  231
Cathelene Robinson
Clerk of Superior Court
Fulton County, Georgia

Borrowers Name  Atlanta Greenspace Initiative, LLC
Address           699 11th Street, Suite 100
                  Atlanta, GA 30318

LOAN NO. 7018565

# REAL ESTATE NOTE

**$332,500.00**

Marietta, Georgia
Date:  May 3, 2006

**FOR VALUE RECEIVED,  ATLANTA GREENSPACE INITIATIVE, LLC**  (hereinafter referred to as "Maker"),  hereby promises to pay to the order of **SOUTHERN NATIONAL BANK** (hereinafter referred to as "Bank"); and any subsequent holder hereof, (being hereinafter referred to as "Holder"), without grace, at the office of Bank located at 200 Cherokee Street,  Marietta, Georgia, 30060 or at such other place as Holder may designate to Maker in writing from time to time, the principal sum of   **Three Hundred Thirty-Two Thousand Five Hundred  Dollars**, together with simple interest on so much thereof as is from time to time outstanding and unpaid, as follows:

Interest only at the rate per annum provided in Paragraph B below on the principal amount from time to time advanced and outstanding pursuant to that certain Construction Loan Agreement of even date herewith, between Maker and Bank, hereinafter called the "Loan Agreement", shall be payable as set forth below.  Accrued interest shall be payable on or before the  5th day of the next succeeding  **month**  commencing on **June 5, 2006** , and continuing on the same day of each  **month**  thereafter to and including  **June 5, 2006**;  and then the entire unpaid principal balance hereof, together with all accrued but unpaid interest thereon, shall be due and payable on  **May 5, 2007**,  if not sooner paid.

☐ A.  Interest shall accrue at the fixed rate of          percent          per annum.

☒ B.  Interest shall accrue at the rate per annum which is  **ONE** percent (1%) in excess of the Prime Rate as hereinafter defined.  For the purposes of this Note, "Prime Rate" shall mean the rate announced from time to time by the **WALL STREET JOURNAL** as its Prime Rate.  In the event the **WALL STREET JOURNAL** ceases to announce a Prime Rate, then the rate shall be the rate announced from time to time by the Bank at its principal office in its sole discretion as its Prime Rate.  The Prime Rate is not necessarily the lowest interest rate available from Bank, and loans may be priced at, above or below the Prime Rate by Bank in its sole discretion.  If at any time or from time to time the Prime Rate increases or decreases, then the rate of interest in effect immediately prior to such increase or decrease in the Prime Rate shall be correspondingly increased or decreased effective on the date on which any such increase or decrease of the Prime Rate becomes effective.  In the event that Bank, during the term hereof, shall abolish or abandon the practice of publishing the Prime Rate, or should the same become unascertainable, Holder shall designate a comparable reference rate which shall be deemed to be the Prime Rate hereunder.  Interest shall be computed hereunder with respect to each day during the term of this Note by multiplying the maximum outstanding principal balance hereunder on that day by a daily interest factor, which daily interest factor shall be calculated (on the basis of a year of 360 days) by dividing the aforesaid interest rate per annum in effect on that day by 360.  Interest so computed shall accrue for each and every day (365 days per year, 366 days per leap Year) on which any indebtedness remains outstanding hereunder, including the day on which funds are initially advanced regardless of the time of day such advance is made, and including the day on which funds are repaid unless repayment in federal funds immediately available in Marietta, Georgia is received by Holder prior to the close of Bank's normal business day, Marietta, Georgia time.  As of the date of the Note, the Prime Rate is Seven **and Three Quarters percent (7.75%)** per annum, and accordingly, the effective rate of interest under this Note as of the date of  this Note is **Eight and Three Quarters percent (8.75%)** per annum.

All payments of principal and interest shall be made in lawful money of the United States of America, which shall at the time of payment, be legal tender in payment of all debts and dues, public and private.

The Note may be prepaid in whole or in part, without the prior written consent of Holder, at any time without penalty, premium or additional interest.

In the event any payment under the loan documents shall become overdue for a period in excess of ten (10) days, a late charge of five cents for each dollar so overdue shall become immediately due and payable to cover the additional expenses incurred by Lender in handling delinquent payments.  In no event shall the late charge be more than $100.00.

The indebtedness evidenced by this Note and the obligations created hereby are secured by that certain Security Deed and Construction Loan Agreement (together with all other documents evidencing or securing or in any way relating to the indebtedness evidenced hereby, herein referred to collectively as the "Loan Documents") entered into this day between Maker and Bank concerning the property located in Fulton County, Georgia, being known as 8.75 acres on **Ajax Dr NW, Atlanta, GA, 2431 Clarissa Dr. NW, Atlanta, GA,** and being more particularly described in the Security Deed; some of which Loan Documents are to be filed for record on or about the date hereof in the appropriate public records.

As security for the payment of this and any other liability of any or all of the Maker to the Holder, irrespective of the nature of such liability or the time it arises, the Maker hereby assigns, conveys, and grants a security interest to the Holder in all property of any and all of the Maker in or coming into the possession, control or custody of the Holder, or in which the Holder has or hereafter acquires a lien, security interest, or other right (including, but not limited to, balances, credits, deposits, accounts and monies).  The Maker agrees to furnish, upon demand, such additional collateral and to execute any appropriate documents related thereto, as may be deemed necessary by the Holder for its security.  The Maker further authorizes the Holder, without notice, to apply any indebtedness due or to become due from Holder to any or all of the Maker in satisfaction of any liability described in this paragraph.

6/05

**EXHIBIT**

**2**

The following events or conditions are defaults hereunder:

(1) Failure of Maker to pay any of their obligations hereunder when due or to perform any promise, obligation or agreement hereunder or under the Security Instrument;

(2) Any warranty, representation, or statement made or furnished to Payee by or on behalf of Maker in connection with this Note or any Security Instrument proves to have been false, incomplete or misleading in any material respect when made or furnished;

(3) Loss, theft, substantial damage, destruction, sale, encumbrance or other diminution in value of any Collateral, or the making or attempting to make, or any levy, seizure or attachment thereof;

(4) Death of any Maker who is a natural person, or death or withdrawal of any partner of any Maker which is a partnership, or dissolution, merger or consolidation of any Maker which is a corporation;

(5) Transfer of a substantial part of the property of any Maker;

(6) Sale, transfer or exchange, either directly or indirectly, of a controlling stock interest of any Maker which is a corporation;

(7) Maker's insolvency or making of any assignment for the benefit of creditors;

(8) The institution of proceedings by or against Maker alleging that it is insolvent or unable to pay its debts as they mature or appointment of a receiver for all or any part of the Collateral, or the rendering of any money judgment against Maker;

(9) Suspension of the operation of Maker's present business;

(10) The occurrence of any default under the Security Instrument or any other document or instrument evidencing obligations of Maker to Payee, whether now existing or hereafter arising; or

(11) Holder otherwise deems itself insecure with respect to repayment of the Note.

It is hereby expressly agreed that should any default be made in the payment of principal or interest as stipulated above, (including, without limitation, non-payment upon maturity), or should any default be made in the performance of any of the covenants or conditions contained in the Loan Documents, or any of them, then a default shall exist hereunder, and in such event the Principal indebtedness evidenced hereby, and any other sums advanced hereunder or under the Loan Documents, or any of them, together with all unpaid interest accrued thereon, shall, at the option of Holder and without notice to Maker, at once become due and payable and may be collected forthwith, regardless of the stipulated date of maturity, and the entire unpaid principal balance of this Note shall bear a default charge at a per annum rate equal to sixteen percent (16%) per annum as of the first day of the default until the Note is paid in full. In the event this Note, or any part thereof, is collected by or through an attorney at law, Maker agrees to pay all costs of collection including, but not limited to, attorney's fees equal to fifteen percent (15%) of the outstanding principal and interest.

Presentment for payment, demand, protest and notice of demand, protest and non-payment and all other notices are hereby waived by Maker. No failure to accelerate the debt evidenced hereby by reason of default hereunder, acceptance of a past due installment, or indulgences granted from time to time shall be construed (i) as a novation of this Note or as a reinstatement of the indebtedness evidenced hereby or as a waiver of such right of acceleration or of the right of Holder thereafter to insist upon strict compliance with the terms of this Note, or (ii) to prevent the exercise of such right of acceleration or any other right granted hereunder or by the laws of the State of Georgia; and Maker hereby expressly waives the benefit of any statute or rule of law or equity now provided, or which may hereafter be provided, which would produce a result contrary to or in conflict with the foregoing. No extension of the time for the payment of this Note or any installment due hereunder, made by agreement with any person now or hereafter liable for the payment of this Note shall operate to release, discharge, modify, change or affect the original liability of Maker under this Note, either in whole or in part unless Holder agrees otherwise in writing. This Note may not be changed orally, but only by an agreement in writing signed by the party against whom enforcement of any waiver, change, modification or discharge is sought.

Maker hereby waives and renounces for themselves, their heirs, successors and assigns, all rights to the benefits of any statute of limitations and any moratorium, reinstatement, marshalling, forbearance, valuation, stay, extension, redemption, appraisement, exemption and homestead now provided, or which may hereinafter be provided for by the laws of the United States of America and of any state thereof, both as to themselves and in and to all of their property, real and personal, against the enforcement and collection of the obligations assigns to Holder a sufficient amount to such homestead or exemption to deliver to Holder a sufficient amount of property or money set apart as exempt to pay the indebtedness evidenced hereby, or any renewal thereof, and does hereby appoint Holder the attorney in fact for Maker to claim any and all homestead exemptions allowed by Law.

This Note is intended as a contract under and shall be construed and enforceable in accordance with the laws of the State of Georgia.

Time is of the essence of this Note.

If from any circumstances whatsoever, fulfillment of any provision of this Note or of any other instrument evidencing or securing the indebtedness evidenced hereby, at the time performance of such provision shall be due, shall involve transcending the limit of validity presently prescribed by any applicable usury statute or any other applicable law, with regard to obligations of like character and amount, then, ipso facto, the obligation to be fulfilled shall

6/05

be reduced to the limit of such validity, so that in no event shall any exaction be possible under this Note or under any other instrument evidencing or securing the indebtedness evidenced hereby, that is in excess of the current limit of such validity, but such obligation shall be fulfilled to the limit of such validity.

       As used herein, the terms "Maker" and "Holder" shall be deemed to include their respective heirs, successors, legal representatives and assigns, whether by voluntary action of the person, firm or entity is a Maker hereunder, then all references to "Maker" shall be deemed to refer equally to each of said persons, firms, or entites, all of whom shall be jointly and severally liable for all of the obligations of Maker hereunder.

       **IN WITNESS WHEREOF,** Maker has caused this Note to be executed under seal by its duly authorized officers on the date first above written.

Signature of
Corporate Maker

Signature of
Partnership Maker

Atlanta Greenspace
Initiative, LLC

By: Eric W. Ohlhausen,
Manager

By: _____

By: _____

By: _____

Attest: _____

Attest: _____

(CORPORATE SEAL)

Signature(s) of
Individual Makers

By: _____

By: _____

Attest: _____

6/05

AMENDMENT TO PROMISSORY NOTE
AND OTHER LOAN DOCUMENTS

5080102414
8.75 Acres in LL 246, 17th Dist., West Atlanta
Fulton County, GA

STATE OF GEORGIA
COUNTY OF _____

THIS AMENDMENT, made as of the **3rd** day of **May, 2008** by and between **Atlanta Greenspace Initiative, LLC** the "Borrower") and UNITED COMMUNITY BANK, formerly known as Southern National Bank, (together with its successors and assigns, the "Bank"), having an office at 200 Cherokee St., Marietta, Georgia 30060;

W̲I̲T̲N̲E̲S̲S̲E̲T̲H̲ ̲T̲H̲A̲T̲:

WHEREAS, the Bank has previously made a certain loan (the "Loan") to the Borrower in the principal amount of up to **$332,500.00** evidenced by that certain Promissory Note dated **May 3, 2006** (the "Note) from the Borrower and payable to the order of the Bank; and

WHEREAS, the Borrower and the Bank desire to amend the Note and other Loan documents to reflect of record certain agreements between them as more particularly set forth herein below:

NOW, THEREFORE, for and in consideration of the said agreements, the Borrower and the Bank do hereby covenant and agree as follows:

1.    **Note Amended.**  The Note is hereby amended as follows [Check the applicable provisions]:

_____ A.  The face principal amount of the Note is hereby increased to


__**XXX**__ B.  The maturity date is hereby extended to **November 3, 2008**
And
Interest shall be payable **monthly** beginning **June 15, 2008,** and continuing on the **15th** day of each consecutive month thereafter.

_____ C.  Commencing _____, the outstanding principal balance of the Note shall bear interest (absent default) as next set forth in Section A or Section B, as indicated by the Borrower's initials on the line beside the caption for the applicable section:

_____
Initials
    **Section A.  Variable Rate**

The outstanding principal balance of the Note shall bear interest at an annual rate equal to the "Prime Rate," as that term is herein defined, plus (   %) percentage points.  The rate of interest earned on the Note shall change on the same date that the Prime Rate changes.

The "Prime Rate" shall mean the rate announced from time to time by the Bank at its main offices as the prime rate of the Bank. The Prime Rate in effect as of the close of business of each day

shall be the applicable rate for that day and for any succeeding non-business day or days of the Bank in determining the applicable interest rate. If the Prime Rate is discontinued as a standard or becomes unascertainable, the holder of the Note shall designate in writing to the Borrower a comparable reference rate which shall be deemed to be the Prime Rate hereunder. The Borrower acknowledges that the Prime Rate is not necessarily the best rate offered by the Bank to all its customers and that the Prime Rate may at times be greater or less than the rate of interest that the Bank makes available to its best commercial customers.

_____
Initials

**Section B.  Fixed Rate**

The outstanding principal balance of the Note shall bear interest at the rate of _____(_____%) percent per annum.

1.  Commencing with a payment on _____,_____, the indebtedness evidenced by the Note shall be due and payable in equal consecutive _____installments of principal and interest in the amount of $_____each, which installments shall continue on the _____ day of each _____month; and the entire outstanding principal balance of the Note, together with all then accrued and unpaid interest, shall be due and payable on the maturity date stated in the Note (as the same may have been extended as provided in paragraph 1.B. above).

2.  **Other Loan Documents Amended.**   All other documents evidencing or securing the Loan are hereby amended as necessary to reflect the changes hereinabove set forth.

3.  **Documents Remain in Effect.**   The Note and the other Loan Documents, as herein amended, remain in full force and effect.

IN WITNESS WHEREOF, the parties hereto have executed this Amendment under seal, as of the day and year first above written.

Borrower

**Atlanta Greenspace Initiative, LLC**

By: _____
Carl M. Drury, III
Principal

UNITED COMMUNITY BANK

By:_____
Phillip Galbreath
Vice President

(Bank Seal)

R11-19-08kr

## EXTENSION

UNREPAID AND AFFECTED LOANS:

**2431 CLARISSA DRIVE, ATLANTA** Subdivision in **Fulton** County, Georgia

Loan no.     Lot / Block

5080102414     8.75+/-  acres  , a/k/a
2431 Clarissa Dr

## AMENDMENT TO PROMISSORY NOTE,
### WITH RATIFICATION OF GUARANTY

THIS AMENDMENT is made and entered into as of the ~~~~~~ day of November 2008, by and between **Atlanta Greenspace Initiative, LLC**, a Georgia **Limited Liability Company** (the "Borrower"), and **UNITED COMMUNITY BANK** (the "Bank").

### Recitals

The Borrower is obligated to the Bank under that certain outstanding promissory note dated **May 3, 2006** (the Note) in the initial principal amount of **$ 332,500.00** (which principal amount may have heretofore been changed by amendment or by partial repayment) from the Borrower and held by the Bank.  The Note evidences one or more loans or financial accommodations (individually, a Loan and collectively, the Loans) to the Borrower for the acquisition, development or improvement of one or more residential lots in **Fulton** County, Georgia (individually, a Lot and collectively, the Lots), which Loans and Lots are more particularly referenced hereinabove, which references are incorporated herein and made a part hereof by this reference.

The Borrower has requested that the Note be amended in certain respects, and the Bank has agreed as set forth herein below.

As used herein, the term Note shall mean the Note referred to hereinabove, as the same may have heretofore been, or herein is, modified, amended, renewed or extended.  The Note, the security deed which secures the Note, and all other documents and instruments given to evidence, secure, govern, support or inform the Note or the Loans or any of them, as the same or any of them may have heretofore been, or herein or concurrently are, modified, amended, renewed or extended, are collectively referred to herein as the Loan Documents.

1

Separate loan numbers are internally assigned to the various Lots by the Bank solely for purposes of internal accounting and administration. The assignment of loan numbers has no bearing on the scope, interpretation or enforceability of the Note or the other Loan Documents.

<u>Agreements</u>

NOW, THEREFORE, for and in consideration of the foregoing recitals, and in consideration of the mutual covenants and agreements herein set forth, the Borrower and the Bank do hereby covenant and agree, and the Note is hereby amended, as follows:

## 1.
### Recitals Incorporated

The foregoing recitals are incorporated herein and made a part hereof by this reference.

## 2.
### Note Amended

**INSTRUCTIONS:** CHECK EACH PARAGRAPH WHICH REFLECTS A CHANGE IN TERMS AND COMPLETE THE BLANKS IN THAT PARAGRAPH. DO <u>NOT</u> CHECK OR COMPLETE PARAGRAPHS WHICH DO NOT REFLECT A CHANGE IN TERMS.

The Note is hereby amended as follows:

☒  a.  <u>Maturity Date Extended</u>.  The maturity date of the Note is hereby extended to ▓▓▓▓▓▓▓▓▓▓▓▓▓.

☒  b.  <u>Interest Rate Adjusted</u>.   Commencing as of the date of this Amendment, the outstanding principal balance of the Note shall bear interest (absent default) as next set forth:

**INSTRUCTIONS:** CHECK AND COMPLETE THE APPLICABLE SECTION:

☒  <u>Variable Rate</u>.  The outstanding principal balance of the Note shall bear interest at an annual rate equal to the <u>Prime Rate</u>, as that term is herein defined, plus **two** ( ▓▓▓▓▓%) percentage points.  The rate of interest earned on the Note shall change on the same date that the Prime Rate changes.  As of the above-stated date of this Amendment, the Prime Rate is ▓▓▓▓▓ per annum, and consequently the initial rate of interest charged on this Note, and stated as simple interest, is ▓▓▓▓▓ percent per annum.

The <u>Prime Rate</u> shall mean the rate announced from time to time by the Bank at its main offices as the prime rate of the Bank. The Prime Rate in effect as of the close of business of each day shall be the applicable rate for that day and for any succeeding

non-business day or days of the Bank in determining the applicable interest rate. If the Prime Rate is discontinued as a standard or becomes unascertainable, the holder of the Note shall designate in writing to the Borrower a comparable reference rate which shall be deemed to be the Prime Rate hereunder. The Borrower acknowledges that the Prime Rate is not necessarily the best rate offered by the Bank to all its customers and that the Prime Rate may at times be greater or less than the rate of interest that the Bank makes available to other customers of the Bank.

Or

☐    Fixed Rate. The outstanding principal balance of the Note shall bear interest at the rate of _____ percent ( ____ %) *per annum*.

☒    c.    Minimum Rate. Anything contained in the Note or in the preceding <u>paragraph b.</u> of this Amendment to the contrary notwithstanding, the principal amount from time to time outstanding under the Note shall <u>in no event</u> accrue interest at a rate which is less than ▓▓▓▓▓▓▓▓▓▓▓ ) *per annum*. During any time in which the applicable (non-default) rate of interest, determined as set forth in the Note or in the preceding <u>paragraph b.</u> (if applicable), would otherwise be less than the rate specified in the immediately preceding sentence, the applicable (non-default) interest rate under the Note shall be deemed to equal the rate specified in the immediately preceding sentence.

☒    d.    Payments. The indebtedness evidenced by the Note shall henceforth be due and payable as next set forth:

INSTRUCTIONS: CHECK AND COMPLETE THE APPLICABLE SECTION:

☒    Interest Only. Installments of accrued and unpaid interest only shall be due and payable **Monthly**, beginning on ▓▓▓▓▓▓▓▓▓▓ and continuing on the **fifth (5th)** day of each succeeding **Month** thereafter, to and including **February 5, 2009**. The entire then outstanding principal balance of the Note, together with all then accrued and unpaid interest, shall be due and payable on **February 5, 2009**

Or

☐    Principal and Interest. Installments of principal and interest, in the initial amount of $ _____ computed as set forth herein below, shall be due and payable monthly, beginning on _____ and continuing on the _____ ( ____ ) day of each succeeding month thereafter, to and including _____ All such installments shall be applied first against accrued and unpaid interest and the

3

balance shall be applied against principal. The entire then outstanding principal balance of the Note, together with all then accrued and unpaid interest, shall be due and payable on          .

As of the date of this amendment and again as of <u>each</u> monthly payment date (each such date is referred to herein as a <u>Payment Computation Date</u>, the Bank shall compute the amount of the <u>next</u> monthly installment of principal and interest (other than the final installment) as that amount necessary to amortize the principal amount hereof outstanding on that Payment Computation Date, at the interest rate in effect as of that Payment Computation Date, over an amortization term equal to          months <u>minus</u> the number of months elapsed between the date of this Amendment and that Payment Computation Date (counting any partial month as a full month). The amount so computed on each Payment Computation Date shall be the effective payment amount for the <u>next</u> monthly installment of principal and interest (except that the final installment shall in all events consist of the entire then outstanding principal balance of the Note, together with all then accrued and unpaid interest).

Or

☐    <u>Principal Plus Interest</u>. Installments of principal in the fixed principal amount of $          each, <u>plus</u> all then accrued and unpaid interest, shall be due and payable monthly, beginning on          and continuing on the          (     ) day of each succeeding month thereafter, to and including          ,. All such installments shall be applied first against accrued and unpaid interest and the balance shall be applied against principal. The entire then outstanding principal balance of the Note, together with all then accrued and unpaid interest, shall be due and payable on          .

### 3.
### Miscellaneous

a.    <u>Governing Law</u>. This Amendment and the Loan Documents are and shall be governed by and construed in accordance with the laws of the State of Georgia, and controlling federal law.

b.    <u>Time of the Essence</u>. Time is of the essence of this Amendment and each of the Loan Documents.

c.    <u>No waiver</u>. The Bank has not waived, and does not hereby expressly or implicitly waive, any existing obligation, breach, failure, default or event of default on the part of the Borrower, whether currently known or unknown to the Bank, under the Note or any of the other Loan Documents.

4

d.     <u>Change in Circumstances</u>. Any material, adverse event or change in the financial circumstances of the Borrower or any guarantor of the Note, or in the value, status or condition of any of the Lots or any improvements thereon, shall, in the judgment of the Bank as a prudent lender, constitute a default under the Note. Such material, adverse events and changes include (without limitation): the filing of a lien against any of the Lots; the commencement of a voluntary or involuntary bankruptcy proceeding by or against the Borrower or any guarantor of the Note; the appointment of a receiver for the assets of the Borrower or any guarantor of the Note; an assignment for the benefit of creditors made by the Borrower or any guarantor of the Note; the commencement of foreclosure proceedings against any assets of the Borrower or any guarantor of the Note; or the filing of a suit against the Borrower or any guarantor of the Note. The default provisions of this paragraph are in addition to, and not in substitution of, other default provisions set forth in the Loan Documents.

e.     <u>Affirmation of Borrower's obligations, *etc*</u>. The Borrower hereby: (i) acknowledges and agrees that it remains fully liable for the timely payment of the full amount of the Note from time to time outstanding, including principal, interest and other amounts, and for the timely performance of the obligations of the Borrower under the Note and the other Loan Documents; and (ii) fully and unconditionally waives any and all defenses to payment and performance, any and all rights of set-off, and any and all counter-claims that the Borrower may have against the Bank or any predecessor-in-interest of the Bank, or may have with respect to the Note or the indebtedness evidenced thereby, or with respect to any of the other Loan Documents, or with respect to the Loans or any of them, that arise from any acts, omissions or circumstances occurring from the beginning of time to and including the date of this Amendment, whether the same be choate or inchoate, vested or not vested in the Borrower, or now known or unknown to Borrower; and (iii) reaffirms its continuing obligations of payment and performance under the Note and all other Loan Documents, to the same extent as if the Note and the other Loan Documents, as amended, were set forth in full herein.

f.     <u>No Novation</u>.   The parties acknowledge and agree that the within and concurrent agreements and amendments with respect to the Loans are not intended to create, and do not create, a novation with respect to the Loans or any of them, nor with respect to the Note or any of the other Loan Documents.

g.     <u>Captions for Convenience</u>. The captions employed in this Amendment are provided merely for convenience and shall not limit the scope or effect of any provision of this Amendment.

h.     <u>Severability</u>. The provisions of this Amendment are intended to be severable. If any provision of this Amendment is determined to be illegal, invalid or unenforceable, such illegality, invalidity or unenforceability shall not affect the legality, validity or enforceability of the remaining provisions of this Amendment.

i.     <u>Documents Remain in Effect</u>. The Note and the other Loan Documents, as amended, all remain in full force and effect.

5

IN WITNESS WHEREOF, the Borrower and the Bank have executed this Amendment under seal, as of the day and year first above written.

Borrower:

Atlanta Greenspace Initiative, LLC

By: _Carl M. Drury III_ (Seal)
Name:  Carl M. Drury, III
its:    Manager

Bank:

United Community Bank

By: _(signature)_
Name:  Richard G. Ellis
its:    Senior Vice President

(Bank Seal)

6

### Ratification of Guaranty

Each undersigned guarantor of the Loans and the Note (both as defined hereinabove) hereby consents and agrees to the within and foregoing agreements and understandings.

Each such guarantor: (i) acknowledges and agrees that the guarantor remains fully liable for the timely payment and performance of its obligations under the guarantor's guaranty of the Loans and the Note and the other Loan Documents (as defined hereinabove); and (ii) fully and unconditionally waives any and all defenses to payment and performance, any and all rights of set-off, and any and all counter-claims that the Borrower or such guarantor may have against the Bank or any predecessor-in-interest of the Bank, or may have with respect to the Note or the indebtedness evidenced thereby, or with respect to any of the other Loan Documents, or with respect to the Loans, that arise from any acts, omissions or circumstances occurring from the beginning of time to and including the date of this Amendment, whether the same be choate or inchoate, vested or not vested in the Borrower or such guarantor, or now known or unknown to the Borrower or such guarantor; and (iii) reaffirms such guarantor's continuing obligations of payment and performance under the aforesaid guaranty to the same extent as if it were set forth in full herein.

Given under the hand and seal of each of the undersigned, as of the day and year first above written.

_____ (Seal)
Name:    Carl M. Drury, III


_____ (Seal)
Name:


_____ (Seal)
Name:


_____ (Seal)
Name:

7

Note Amendment R3-9-09

# AMENDMENT TO PROMISSORY NOTE

UNREPAID AND AFFECTED LOANS:

Property Description (acreage, subdivision, etc.):

**8.75+/- acres, a/k/a 2431 Clarissa Drive**

<u>Loan #</u>         <u>Lot #</u>
5080102414     2431
                   Clarissa Dr



THIS AMENDMENT is made and entered into as of the **5th** day of **March, 2009**, by and between **Atlanta Greenspace Initiative, LLC,** a Georgia **Limited Liability Company** (the "<u>Borrower</u>"), and **UNITED COMMUNITY BANK** (the "<u>Bank</u>").

## Recitals

The Borrower is obligated to the Bank under that certain outstanding promissory note dated **May 3, 2006** (the Note) in the <u>initial</u> principal amount of **$332,500.00** (which principal amount may have heretofore been changed by amendment or by partial repayment) from the Borrower and held by the Bank. The Note evidences one or more loans or financial accommodations (individually, a Loan and collectively, the Loans) to the Borrower for the acquisition, development or improvement of one or more residential lots in **Fulton County,** Georgia (individually, a Lot and collectively, the Lots), which Loans and Lots are more particularly referenced hereinabove, which references are incorporated herein and made a part hereof by this reference.

The Borrower has requested that the Note be amended in certain respects, and the Bank has agreed as set forth herein below.

As used herein, the term <u>Note</u> shall mean the Note referred to hereinabove, as the same may have heretofore been, or herein is, modified, amended, renewed or extended. The Note, the security deed which secures the Note, and all other documents and instruments given to evidence, secure, govern, support or inform the Note or the Loans or any of them, as the same or any of them may have heretofore been, or herein or concurrently are, modified, amended, renewed or extended, are collectively referred to herein as the <u>Loan Documents</u>.

Separate loan numbers are internally assigned to the various Lots by the Bank solely for purposes of internal accounting and administration. The assignment of loan numbers has no bearing on the scope, interpretation or enforceability of the Note or the other Loan Documents.

Note Amendment R3-9-09

The <u>Prime Rate</u> shall mean the rate announced from time to time by the Bank at its main offices as the prime rate of the Bank. The Prime Rate in effect as of the close of business of each day shall be the applicable rate for that day and for any succeeding non-business day or days of the Bank in determining the applicable interest rate. If the Prime Rate is discontinued as a standard or becomes unascertainable, the holder of the Note shall designate in writing to the Borrower a comparable reference rate which shall be deemed to be the Prime Rate hereunder. The Borrower acknowledges that the Prime Rate is not necessarily the best rate offered by the Bank to all its customers and that the Prime Rate may at times be greater or less than the rate of interest that the Bank makes available to other customers of the Bank.

<u>**Or**</u>

☒    <u>Fixed Rate</u>.  The outstanding principal balance of the Note shall bear interest at the rate of **five and one half**   percent **(5.50%)** *per annum*.

☐    d.    <u>**Minimum Rate**</u>.  Anything contained in the Note or in the preceding <u>paragraph b</u>. of this Amendment to the contrary notwithstanding, the principal amount from time to time outstanding under the Note shall <u>in no event</u> accrue interest at a rate which is <u>less</u> than _ *per annum*.  During any time in which the applicable (non-default) rate of interest, determined as set forth in the Note or in the preceding <u>paragraph b</u>. (if applicable), would otherwise be less than the rate specified in the immediately preceding sentence, the applicable (non-default) interest rate under the Note shall be deemed to equal the rate specified in the immediately preceding sentence.

☒    e.    <u>**Payments**</u>.  The indebtedness evidenced by the Note shall henceforth be due and payable as next set forth:

INSTRUCTIONS:  CHECK AND COMPLETE THE APPLICABLE SECTION:

☐    <u>Interest Only</u>. Installments of accrued and unpaid interest only shall be due and payable   , beginning on          and continuing on the          day of each succeeding    thereafter, to and including          . The entire then outstanding principal balance of the Note, together with all then accrued and unpaid interest, shall be due and payable on

<u>**Or**</u>

Note Amendment R3-9-09

## 3.
### MISCELLANEOUS

a.  <u>Governing Law</u>.  This Amendment and the Loan Documents are and shall be governed by and construed in accordance with the laws of the State of Georgia, and controlling federal law.

b.  <u>Time of the Essence</u>.  Time is of the essence of this Amendment and each of the Loan Documents.

c.  <u>No waiver</u>.  The Bank has not waived, and does not hereby expressly or implicitly waive, any existing obligation, breach, failure, default or event of default on the part of the Borrower, whether currently known or unknown to the Bank, under the Note or any of the other Loan Documents.

d.  <u>Affirmation of Borrower's obligations, *etc*</u>.  The Borrower hereby: (i) acknowledges and agrees that it remains fully liable for the timely payment of the full amount of the Note from time to time outstanding, including principal, interest and other amounts, and for the timely performance of the obligations of the Borrower under the Note and the other Loan Documents; and (ii) fully and unconditionally waives any and all defenses to payment and performance, any and all rights of set-off, and any and all counter-claims that the Borrower may have against the Bank or any predecessor-in-interest of the Bank, or may have with respect to the Note or the indebtedness evidenced thereby, or with respect to any of the other Loan Documents, or with respect to the Loans or any of them, that arise from any acts, omissions or circumstances occurring from the beginning of time to and including the date of this Amendment, whether the same be choate or inchoate, vested or not vested in the Borrower, or now known or unknown to Borrower; and (iii) reaffirms its continuing obligations of payment and performance under the Note and all other Loan Documents, to the same extent as if the Note and the other Loan Documents, as amended, were set forth in full herein.

e.  <u>No Novation</u>.  The parties acknowledge and agree that the within and concurrent agreements and amendments with respect to the Loans are not intended to create, and do not create, a novation with respect to the Loans or any of them, nor with respect to the Note or any of the other Loan Documents.

f.  <u>Captions for Convenience</u>.  The captions employed in this Amendment are provided merely for convenience and shall not limit the scope or effect of any provision of this Amendment.

Note Amendment R3-9-09

    g.    <u>Severability</u>.  The provisions of this Amendment are intended to be severable.  If any provision of this Amendment is determined to be illegal, invalid or unenforceable, such illegality, invalidity or unenforceability shall not affect the legality, validity or enforceability of the remaining provisions of this Amendment.

    h. <u>Documents Remain in Effect</u>.  The Note and the other Loan Documents, as amended, all remain in full force and effect.

    IN WITNESS WHEREOF, the Borrower and the Bank have executed this Amendment under seal, as of the day and year first above written.

<u>Borrower</u>:

**Atlanta Greenspace Initiative, LLC**

_____(Seal)
**Carl M. Drury, III**
**Manager**

_____ (Seal)

<u>Bank</u>:

**United Community Bank**

_____
**Richard G. Ellis**
**Senior Vice President**

(Bank Seal)

Book 42586 Pg 635
Filed and Recorded May-15-2006 11:03am
2006-0147318
Georgia Intangible Tax Paid $0.00
Juanita Hicks
Clerk of Superior Court
Fulton County, Georgia

MILLER & GAINES, P.C.
1590 PHOENIX BLVD STE 100
ATLANTA, GA 30349

**AFTER RECORDING RETURN TO:**
William A. Miller, Esq.
Miller and Gaines, PC
1590 Phoenix Blvd, Ste 100
Atlanta, GA 30349

### DEED TO SECURE DEBT

STATE OF GEORGIA
COUNTY OF Fulton

THIS INDENTURE, made the 3rd day of May, between **ATLANTA GREENSPACE INITIATIVE, LLC,** of the county of Fulton and state of Georgia, as party or parties of the first part, hereinafter called Grantor, and **SOUTHERN NATIONAL BANK, 200 Cherokee Street, Marietta, Georgia 30060,** a Georgia Banking Association, as party of the second part, hereafter called Grantee:

WITNESSETH, That Grantor, for and in consideration of the sum of Ten Dollars and 00/100 ----------($10.00) and other good and valuable consideration in hand paid at and before the sealing and delivery of these presents, the receipt whereof is hereby acknowledged, has granted, bargained, sold, aliened, conveyed and confirmed, and by these presents does grant, bargain, sell, alien, convey and confirm unto the said Grantee, its successors and assigns, the following described property, to wit: **TWO PARCELS AS FOLLOWS:**
**PARCEL ONE:**
    All that tract or parcel of land lying and being in Land Lot 246 of the 7 District, n/a
    Section, Fulton County, Georgia, being Lot 14, Block "F", Unit Four, Carver Hills Subdivision, Section Two,
    as per plat of survey recorded in Plat Book 74, Page 107, Fulton County, Georgia
    Records, which plat is incorporated herein and made a part hereof by reference.
    **SEE EXHIBIT "A" ATTACHED FOR PARCEL TWO**
    TO HAVE AND TO HOLD the said bargained premises with all and singular the rights, members and appurtenances thereto appertaining, including all fixtures and equipment now or hereafter attached to or used in connection with said property, to the only proper use, benefit and behoof of Grantee, its successors and assigns, in fee simple and Grantor, shall and will WARRANT AND FOREVER DEFEND the said premises, unto Grantee, its successors and assigns, against Grantor, and the heirs, executors and administrators or Grantor, and against all and every other person or persons (except as may be otherwise expressly stated herein).

This conveyance is a deed passing legal title pursuant to the laws of the State of Georgia governing loan or security deeds, and is not a mortgage, and upon payment of the debt hereby secured, including renewals and extensions, and all other and further indebtedness of Grantor to Grantee, this security deed shall be cancelled and surrendered pursuant thereto, the debt hereby secured in addition to that indicated below being evidenced by that promissory note dated **May 3, 2006,** made by Grantor to order of Grantee for the principal sum of
together with interest as provided in said note, the terms and conditions of which are hereby incorporated by reference into this deed. The final and last installment of principal and interest shall be due and payable on the 5th day of May, 2007.
    It is the intention of this instrument to secure not only the indebtedness hereinabove described along with any and all renewals and extensions thereof, in whole or in part, but also any and an all other and further indebtedness now owing or which may hereafter be owing, however incurred, to Grantee, its successors and assigns, by Grantor and Grantor's successors in title, whether directly or indirectly as principal, endorser, guarantor or otherwise. If any portion of said indebtedness or any provision of this instrument shall be held invalid for any reason, it is the intent of the parties that such portion shall be severable, and such invalidity shall not affect the remainder of said debt or instrument. No release of any part of the property herein described or extension of all or any part of the indebtedness hereby secured, shall affect the personal liability of any person upon the indebtedness hereby secured, nor the priority of this instrument.
    This conveyance is subject only to that certain deed to secure debt N/A.

Grantor represents and warrants that this deed when recorded shall not be subject to any other deed or encumbrance, other than as set out above. In the event of any default in the performance of any of the obligations of any prior security deed or lien, Grantee and assigns may make any payments or perform any acts necessary to relieve said default, and the cost thereof shall be added to the indebtedness hereby secured. Any such default in any prior security deed may, at the option of the Grantee herein or assigns, be deemed a default under the present instrument. Grantor herein hereby assigns and transfers unto Grantee and assigns all surplus funds, together with escrow funds and accounts for taxes or insurance which may come into or be in the hands of any prior security deed upon foreclosure of the same, hereby directing that the same be forthwith paid over to Grantee herein and its assigns upon the debt hereby secured.
    Grantor covenants and agrees not to further encumber the property conveyed hereby, and not to increase the present amount due on any prior Deed to Secure Debt, either by renewal, extension or additional advance during any period of time while this instrument is in effect, without first obtaining the written consent of the Grantee herein, its successors or assigns; any violation of this provision, in addition to the other provisions of this instrument, shall constitute a default under the terms and conditions hereof. It is agreed that the Grantee shall be subrogated to the claims and liens of all parties whose claims or liens are discharged or paid with the proceeds of the loan secured hereby.
    The Grantor covenants and agrees, so long as any indebtedness secured hereby shall remain unpaid, to keep the property and all improvements thereon in as good condition as now exists, natural wear and tear excepted, and also not to demolish, destroy, or remove any permanent structure now existing on the premises or make any alteration thereon that would constitute a structural change without the written consent of the Grantee; also, not to permit waste thereof or to carry on any illegal activities on said property; to pay all taxes and assessments that

*EWD*    5/04

may be liens upon said property, as they become due; and to keep the improvements on said property fully insured against loss by fire and other hazards as may, from time to time, be required by Grantee in amounts and companies and with such mortgage clause approved by Grantee, and shall deliver the policies of insurance and any renewals thereof to the said Grantee; and that any tax, assessment, prior lien or premium of insurance, not paid when due by Grantor may be paid by the Grantee, and any sum so paid shall be added to the amount of said principal debt as part thereof, shall draw interest from the time of said payment at the highest lawful rate, and shall, with interest, be covered by the security of this deed.

Extension of the time for payment or modification of amortization of the sums secured by this deed granted by Grantee to any successor in interest of Grantor shall not operate to release, in any manner, the liability of the original Grantor and Grantor's successors in interest. Grantee shall not be required to commence proceedings against such successor or refuse to extend time for payment of otherwise modify amortizations of the sums secured by this deed by reason of any demand made by the original Grantor and Grantor's successors in interest.

Any forbearance by Grantee in exercising any right or remedy hereunder, or otherwise afforded by applicable law, shall not be a waiver of or preclude the exercise of any such right or remedy.  The procurement of insurance or the payment of taxes or other liens or charges by Grantee shall not be a waiver of Grantee's right to accelerate the maturity of the indebtedness secured by this deed.  Grantor waives all right to reasonable notice by Grantee of its intention to rely on the exact terms of this deed and the note secured hereby in the event that the parties hereto in the course of the execution of the loan contract evidenced by said deed and note, depart from the terms thereof any pay or receive money under such departure.

IF ALL OR ANY PART OF THE PROPERTY OR AN INTEREST THEREIN IS SOLD OR TRANSFERRED BY GRANTOR WITHOUT GRANTEE'S PRIOR WRITTEN CONSENT, EXCLUDING (A) THE CREATION OF A LIEN OR ENCUMBRANCE SUBORDINATE TO THIS DEED, (B) THE CREATION OF A PURCHASE MONEY SECURITY INTEREST FOR HOUSEHOLD APPLIANCES, (C) A TRANSFER BY DEVISE, DESCENT OR BY OPERATION OF LAW UPON THE DEATH OF A JOINT TENANT OR (D) THE GRANT OF ANY LEASEHOLD INTEREST OF THREE YEARS OR LESS NOT CONTAINING AN OPTION TO PURCHASE, GRANTEE MAY, AT GRARNTEE'S OPTION, DECLARE ALL THE SUMS SECURED BY THIS DEED TO BE IMMEDIATELY DUE AND PAYABLE.  Grantee shall have waived such option to accelerate if, prior to the sale or transfer, Grantee and the person to whom the property is to be sold or transferred reach an agreement in writing that the credit of such person is satisfactory to grantee and that the interest payable on the sums secured by this deed shall be at such rate as Grantee shall request.

AND Grantor hereby further covenants and agrees that in case of any default in the payments required by the above described note or in the payment of other indebtedness hereby secured or in the due performance of any of the covenants herein expressed to be performed by Grantor or falsity or any representation herein contained, then and in that event, the entire amount of said principal indebtedness, together with any and all sums paid for account of Grantor in accordance with the provisions above set forth, shall at the option of Grantee, and without notice, then and thereby become and be due and payable forthwith, with accrued interest, and all expenses and cost of collection, including fifteen per centum of the amount due as attorney's fees, and the amount of such costs, expenses and fees shall be added to the amount of the debt hereby secured as part thereof, and as such such shall also be covered by the security of this deed; and time is of the essence of this contract.  All of the covenants and agreements set out in said note and any subsequent notes are hereby made a part of this instrument.

In consideration of the loan made Grantor by Grantee and as additional security hereunder, Grantor hereby assigns to Grantee the rents of the property, provided that Grantor shall, prior to default hereunder or abandonment of the property have the right to collect and retain such rents as they become due and payable.

Upon default hereunder or abandonment of the property, Grantee, in person, by agent or by judicially appointed receiver, shall be entitled to enter upon take possession of and manage the property and to collect the rents of the property, including those past due.  All rents collected by Grantee of the receiver shall be applied first to payment of the costs of management of the property and collection of rents, including, but not limited to, receiver's fees, premiums on receiver's bonds and reasonable attorney's fees, and then to the sums secured by this deed.  Grantee and the receiver shall be liable to account only for those rents actually received.  Grantor hereby constitutes Grantee as Grantor's agent to declare the existence of a default hereunder, and Grantor hereby agrees that any tenant in said property or any renting agent in charge thereof shall be, and is hereby authorized when a default shall be so declared to exist, to pay any such rents to Grantee or its assigns.

In the event of default in the indebtedness hereby secured, either in due course or by acceleration as herein provided, or in the event of default in the performance of any of the obligations required of the Grantor by the terms of this deed, the Grantee shall be entitled to have a receiver appointed for the property herein described, in connection with or as a part of any proceeding to foreclose this deed or to enforce any of its terms or the collection of all or part of said debt and Grantor agrees to the appointment of such receiver without proof of insolvency or other equitable grounds and hereby appoints the Grantee as attorney in fact with authority to consent for the Grantor to the appointment of such receiver.

In case the debt hereby secured shall not be paid when it becomes due by maturity in due course, or by reason of a default as herein provided, Grantor hereby grants to Grantee and assigns, the following irrevocable power of attorney: To sell the said property or any part thereof at public auction, at the usual place for conducting sales at the Courthouse in the County where the land or any part thereof lies, in said State, to the highest bidder for cash, after advertising the time, terms and place of such sale once a week for the four consecutive weeks immediately preceding such sale (but without regard to the number of days) in the official organ published in the County where the land lies, or in the paper in which the Sheriff's advertisements for such County are published, all other notice being hereby waived by Grantor, and Grantee or any person on behalf of Grantee, or assigns may bid and purchase at such sale and may thereupon execute and deliver to the purchaser or purchasers at such sale a sufficient conveyance of said premises in fee simple, which conveyance shall contain recitals as to the happening of the default upon which the execution of the power of sale herein granted depends, and said recitals shall be presumptive evidence that all preliminary acts prerequisite to said sale and deed were in all things duly complied with, and Grantor hereby constitutes and appoints Grantee and assigns, the agent and attorney in fact of Grantor to make such recitals, and hereby covenants and agrees that the recitals so to be made by Grantee, or assigns, shall be binding and conclusive upon Grantor, and the heirs, executors, Administrators and assigns of Grantor, and that the conveyance to be made by Grantee, or assigns, (and in the event of a deed in lieu of foreclosure, then as to such conveyance, shall be effectual to bar all right, title and interest, and equity of redemption of Grantor, or the successors in interest of Grantor, in and to said premises, and Grantee or assigns, shall collect the proceeds of such sale, and after receiving therefrom the entire amount of principal and interest due together with all costs and expenses of sale and fifteen per centum of the aggregate amount due for attorney's fees, shall pay over any surplus to Grantor, or to the heirs or assigns or Grantor as provided by law.  In case of a sale as hereinabove provided, Grantor, or any person in possession under Grantor, shall then become and be tenants holding over and shall forthwith deliver possession to the purchaser at such sale, or be summarily dispossessed, in accordance with the provisions of law applicable to tenants holding over.

*EWD*

The power and agency hereby granted are coupled with an interest and are irrevocable by death or otherwise and are granted as cumulative to the remedies for collection of said indebtedness provided by law.  This deed and the note or notes hereby secured shall be deemed and construed to be contracts executed and to be performed in Georgia.

IN WITNESS WHEREOF, Grantor has hereto set hand(s) and seal(s) the day and year first above written.

Signed, sealed and delivered

in the presence of:

_____
Witness

_____
Notary Public

Borrower: Atlanta Greenspace Initiative, LLC

_____
by:Eric W. Ohlhausen, Manager

_____
by:

5/04

## EXHIBIT "A"

All that tract or parcel of land lying and being in land lot 246 of the 17th District of Fulton County, Georgia, and being approximately 8.274 Acres as shown and delineated on a plat of survey prepared for Dillard Land Investments by Robert B. Betteron, Registered Land Surveyor (R.L.S.# 2496), dated February 9, 2006, and more particularly described as follows:

Beginning at a point found on the Southwest corner of the intersection of the 60-foot Eastern right of way of McCallie Boulevard and the 50-foot Southern right of way of Ajax Drive; running thence Northwesterly along the 50-foot Southern right of way of Ajax Drive 163.22 feet; running thence South 48 degrees 50 minutes 53 seconds West 149.06 feet; running thence South 19 degree 35 minutes 29 seconds East 168.49 feet; running thence South 19 degrees 46 minutes 57 seconds East 63.65 feet; running thence South 88 degrees 51 minutes 50 seconds West 334.24 feet; running thence North 89 degrees 46 minutes 36 seconds West 197.50 to a concrete monument found and being the TRUE POINT OF BEGINNING; running thence South 0 degrees 22 minutes 29 seconds West 321.98 feet; running thence North 56 degrees 30 minutes 0 seconds West 87.65 feet; running thence North 58 degrees 59 minutes 11 seconds West 87.19 feet; running thence South 73 degrees 54 minutes 41 seconds West 71.66 feet; running thence South 56 degrees 42 minutes 29 seconds West 45.53 feet; running thence South 67 degrees 40 minutes 17 seconds West 63.53 feet; running thence South 87 degrees 28 minutes 45 seconds West 79.49 feet; running thence South 62 degrees 52 minutes 45 seconds West 92.18 feet; running thence North 22 degrees 35 minutes 26 seconds West 87.10 feet; running thence North 11 degrees 17 minutes 12 seconds West 88.92 feet; running thence North 6 degrees 25 minutes 59 seconds West 120.53 feet; running thence North 10 degrees 44 minutes 56 seconds East 77.95 feet; running thence North 7 degrees 30 minutes 49 seconds East 130.20 feet; running thence North 3 degrees 4 minutes 3 seconds East 94.71 feet; running thence North 12 degrees 25 minutes 46 seconds East 109.90 feet; running thence South 89 degrees 36 minutes 31 seconds East 476.91 feet; running thence South 0 degrees 7 minutes 17 seconds West 429.48 feet to TRUE POINT OF BEGINNING.

Deed Book 42586 Pg 639
Juanita Hicks
Clerk of Superior Court
Fulton County, Georgia

GRANTOR: Atlanta Greenspace Initiative, LLC

LENDER:    SOUTHERN NATIONAL BANK

DATE OF SECURITY DEED: May 3, 2006

## WAIVER OF BORROWER'S RIGHTS

BY EXECUTION OF THIS PARAGRAPH, GRANTOR EXPRESSLY: (1) ACKNOWLEDGES THE RIGHT TO ACCELERATE THE DEBT AND THE POWER OF ATTORNEY GIVEN HEREIN TO LENDER TO SELL THE PREMISES BY NONJUDICIAL FORECLOSURE UPON DEFAULT BY GRANTOR WITHOUT ANY JUDICIAL HEARING AND WITHOUT ANY NOTICE OTHER THAN SUCH NOTICE AS IS SPECIFICALLY REQUIRED TO BE GIVEN UNDER THE PROVISIONS OF SAID DEED TO SECURE DEBT; (2) WAIVES ANY AND ALL RIGHTS WHICH GRANTOR MAY HAVE UNDER THE FIFTH AND FOURTEENTH AMENDMENTS TO THE CONSTITUTION OF THE UNITED STATES, THE VARIOUS PROVISIONS OF THE CONSTITUTION FOR THE SEVERAL STATES, OR BY REASON OF ANY OTHER APPLICABLE LAW TO NOTICE AND TO JUDICIAL HEARING PRIOR TO THE EXERCISE BY LENDER OF ANY RIGHT OR REMEDY HEREIN PROVIDED TO LENDER, EXCEPT SUCH NOTICE AS IS SPECIFICALLY REQUIRED TO BE PROVIDED IN SAID DEED TO SECURE DEBT AND ANY NOTICE REQUIRED BY OFFICIAL CODE OF GEORGIA ANNOTATED 44-14-162.1 THROUGH 44-14-162.4 (GA CODE ANNOTATED SECTION 67-1507 THROUGH 67-1510); (3) ACKNOWLEDGES THAT GRANTOR HAS READ THIS DEED AND ANY AND ALL QUESTIONS REGARDING THE LEGAL EFFECT OF SAID DEED AND ITS PROVISIONS HAVE BEEN EXPLAINED FULLY TO GRANTOR AND GRANTOR HAS BEEN AFFORDED AN OPPORTUNITY TO CONSULT WITH COUNSEL OF GRANTOR'S CHOICE PRIOR TO EXECUTING THIS DEED; (4) ACKNOWLEDGES THAT ALL WAIVERS OF THE AFORESAID RIGHTS OF GRANTOR HAVE BEEN MADE KNOWINGLY, INTENTIONALLY AND WILLINGLY BY GRANTOR AS PART OF A BARGAINED FOR LOAN TRANSACTION; (5) AGREES THAT GRANTOR'S RIGHT TO NOTICE SHALL BE LIMITED TO THOSE RIGHTS TO NOTICE PROVIDED BY THIS DEED AND NO OTHER; AND (6) AGREES THAT THE PROVISIONS HEREOF ARE INCORPORATED INTO AND MADE A PART OF THE SECURITY DEED.

READ AND AGREED BY GRANTOR:

Atlanta Greenspace Initiative, LLC

Signed, Sealed and delivered

in the presence of:

By: Eric W. Ohlhausen, Manager

NOTARY PUBLIC

MY COMMISSION EXPIRES DEC. 1, 2009

### CLOSING ATTORNEY'S AFFIDAVIT

RE: BORROWER(S): Atlanta Greenspace Initiative, LLC

LENDER:    SOUTHERN NATIONAL BANK

DATE:    May 3, 2006

Before the undersigned attesting officer personally appeared the undersigned closing attorney, who having been first duly sworn according to law, states under oath as follows:

In closing the above loan, but prior to the execution of the Deed to Secure Debt and "Waiver of the Borrower's Rights" by the Borrower(s), I reviewed with and explained to the Borrower(s) the terms and provisions of the Deed to Secure Debt and particularly the provisions, thereof authorizing the Lender to sell the secured property by a nonjudicial foreclosure under the power of sale, together with the "Waiver of Borrower's Rights" and informed the Borrower(s) of Borrower's rights under the Constitution of the State of Georgia and the Constitution of the United States to notice and a judicial hearing prior to such foreclosure in the absence of a knowing, intentional and willing contractual waiver by Borrower(s) of Borrower's rights. After said review with and explanation to Borrower(s), Borrower(s) executed the Deed to Secure Debt and "Waiver of Borrower's Rights."

Based on said review with and explanation to the Borrower(s) knowingly, intentionally and willingly executed the waiver of Borrower's constitutional rights to notice and judicial hearing prior to any such nonjudicial foreclosure.

CLOSING ATTORNEY

Sworn to and subscribed before me
on the date set forth above.

NOTARY PUBLIC

5/04

Deed Book 45090 Pg 684
Filed and Recorded May-30-2007 02:21pm
2007-0157033
Georgia Intangible Tax Paid $0.00
Catheleen Robinson
Clerk of Superior Court
Fulton County, Georgia

RECORDATION REQUESTED BY:
   UNITED COMMUNITY BANK
   MARIETTA COMMERCIAL LOANS
   PO BOX 4177
   MARIETTA, GA  30061

WHEN RECORDED MAIL TO:
   UNITED COMMUNITY BANK
   MARIETTA COMMERCIAL LOANS
   PO BOX 4177
   MARIETTA, GA  30061

SEND TAX NOTICES TO:
   ATLANTA GREENSPACE INITIATIVE, LLC
   699 11TH STREET, SUITE 100
   ATLANTA, GA  30318

## MODIFICATION OF SECURITY DEED

THIS MODIFICATION OF SECURITY DEED dated May 3, 2007, is made and executed between ATLANTA GREENSPACE INITIATIVE, LLC, whose address is 699 11TH STREET, SUITE 100, ATLANTA, GA  30318 (referred to below as "Grantor") and UNITED COMMUNITY BANK, whose address is PO BOX 4177, MARIETTA, GA  30061 (referred to below as "Lender").

SECURITY DEED. Lender and Grantor have entered into a Security Deed dated May 3, 2006 (the "Security Deed") which has been recorded in FULTON County, State of Georgia, as follows:

   RECORDED ON MAY 15, 2006 DEED BOOK 42586, PAGE 635 IN THE REAL PROPERTY RECORDS OF FULTON COUNTY, GEORGIA.

REAL PROPERTY DESCRIPTION. The Security Deed covers the following described real property located in FULTON County, State of Georgia and is described as follows:

   See EXHIBIT A, which is attached to this Modification and made a part of this Modification as if fully set forth herein.

The Real Property or its address is commonly known as  2431 CLARISSA DRIVE, ATLANTA , GA  30318.

MODIFICATION. Lender and Grantor hereby modify the Security Deed as follows:

   THE NOTE EVIDENCING THE INDEBTEDNESS WHICH THE SECURITY DEED ORIGINALLY SECURED HAS BEEN MODIFIED TO PROVIDE THAT THE PRINCIPAL AMOUNT OF THE INDEBTEDNESS NOW SECURED THEREUNDER IS $ 332,500.00 AND THE MATURITY DATE OR DATE OF LAST INSTALLMENT PAYMENT IS MAY 3, 2008 .  IT IS THE INTENTION OF GRANTOR AND LENDER TO CREATE A PERPETUAL OR INDEFINITE SECURITY INTEREST IN THE REAL PROPERTY PURSUANT TO O.C.G.A. 44-14-80(b).

CONTINUING VALIDITY. Except as expressly modified above, the terms of the original Security Deed shall remain unchanged and in full force and effect and are legally valid, binding, and enforceable in accordance with their respective terms. Consent by Lender to this Modification does not waive Lender's right to require strict performance of the Security Deed as changed above nor obligate Lender to make any future modifications. Nothing in this Modification shall constitute a satisfaction of the promissory note or other credit agreement secured by the Security Deed (the "Note"). It is the intention of Lender to retain as liable all parties to the Security Deed and all parties, makers and endorsers to the Note, including accommodation parties, unless a party is expressly released by Lender in writing. Any maker or endorser, including accommodation makers, shall not be released by virtue of this Modification. If any person who signed the original Security Deed does not sign this Modification, then all persons signing below acknowledge that this Modification is given conditionally, based on the representation to Lender that the non-signing person consents to the changes and provisions of this Modification or otherwise will not be released by it.  This waiver applies not only to any initial extension or modification, but also to all such subsequent actions.

NO NOVATION. This agreement shall not constitute a novation of the note, any security instrument, or any other loan documents.

GRANTOR'S REPRESENTATION AND WAIVER. Grantor represents and warrants that there is no default under the terms of the note, or the other loan documents (the "Loan Documents") evidencing the existing indebtedness secured by the Security Deed, and that Grantor knows of no event that has occurred which, but for the passage of time or the giving of notice, would constitute as event of default under the terms of the Loan Documents.  Grantor waives and releases Lender from any and all claims which Grantor may have against Lender, its agents and assigns, with respect to the Loan Documents and the Security Deed, whether such claims are known or unknown, or arise under contract or in tort.

GRANTOR ACKNOWLEDGES HAVING READ ALL THE PROVISIONS OF THIS MODIFICATION OF SECURITY DEED AND GRANTOR AGREES TO ITS TERMS. THIS MODIFICATION OF SECURITY DEED IS DATED MAY 3, 2007.

IN WITNESS WHEREOF, THIS MODIFICATION HAS BEEN SIGNED BY THE UNDERSIGNED, WHO ACKNOWLEDGES A COMPLETED COPY HEREOF.  THIS MODIFICATION IS GIVEN UNDER SEAL AND IT IS INTENDED THAT THIS MODIFICATION IS AND SHALL CONSTITUTE AND HAVE THE EFFECT OF A SEALED INSTRUMENT ACCORDING TO LAW.

Signed, Sealed and Delivered in the presence of:

X _____
   Unofficial Witness

_____
Notary Public, _____ Cobb _____ County

(NOTARY SEAL)

ROBIN D. ALVAREZ
Notary Public, Cobb County, Georgia
My Commission expires: My Commission Expires January 16, 2009

(N.P. SEAL)

GRANTOR:

ATLANTA GREENSPACE INITIATIVE, LLC

By: _____ (Seal)
   CARL M DRURY III, Manager of ATLANTA
   GREENSPACE INITIATIVE, LLC

LENDER:

UNITED COMMUNITY BANK

X _____ (Seal)
   Authorized Signer

LASER PRO Lending, Ver. 5.36.00.004  Copr. Harland Financial Solutions, Inc. 1997, 2007.  All Rights Reserved.  - GA  L:\GEORGIA\CFI\PL\G201.FC  TR-164715  PR-10

Deed Book 45090 Pg. 685
Cathelene Robinson
Clerk of Superior Court
Fulton County, Georgia

## EXHIBIT "A"

**PARCEL ONE:**

All that tract or parcel of land lying and being in Land Lot 246 of the 17th District, n/a Section, Fulton County, Georgia, being Lot 14, Block "F", Unit Four, Carver Hills Subdivision, Section Two, as per plat of survey recorded in Plat Book 74, Page 107, Fulton County, Georgia Records, which plat is incorporated herein and made a part hereof by reference.

**PARCEL TWO**

All that tract or parcel of land lying and being in Land Lot 246 of the 17th District of Fulton County, Georgia, and being approximately 8.274 Acres as shown and delineated on a plat of survey prepared of Dillard Land Investments by Robert B. Betteron, Registered Land Surveyor (R.L.S.#2496), dated February 9, 2006, and more particularly described as follows:

Being inning as a point found on the Southwest corner of the intersection of the 60 – foot Eastern right of way of McCallie Boulevard and the 50-foot Southern right of way of Ajax Drive; running thence Northwesterly along the 50-foot Southern right of way of Ajax Drive 163.22 feet; running thence South 48 degrees 50 minutes 53 seconds West 149.06 feet; running thence South 19 degree 35 minutes 29 seconds East 168.49 feet; running thence South 19 degrees 46 minutes 57 seconds East 63.65 feet; running thence South 88 degrees 51 minutes 50 seconds West 334.24 feet; running thence North 89 degrees 46 minutes 36 seconds West 197.50 to a concrete monument found and being the TRUE POINT OF BEGINNING; running thence South 0 degrees 22 minutes 29 seconds West 321.98 feet; running thence North 56 degrees 30 minutes 0 seconds West 87.65 feet; running thence North 58 degrees 59 minutes 11 seconds West 87.19 feet; running thence South 73 degrees 54 minutes 41 seconds West 71.66 feet; running thence South 56 degrees 42 minutes 29 seconds West 45.53 feet; running thence South 57 degrees 40 minutes 17 seconds West 63.53 feet; running thence South 87 degrees 28 minutes 45 seconds West 79.49 feet; running thence South 62 degrees 52 minutes 45 seconds West 92.18 feet; running thence North 22 degrees 35 minutes 26 seconds West 87.10 feet; running thence North 11 degrees 17 minutes 12 seconds West 88.92 feet; running thence North 6 degrees 25 minutes 59 seconds West 120.53 feet; running thence North 10 degrees 44 minutes 56 seconds East 77.95 feet; running thence North 7 degrees 30 minutes 49 seconds East 130.20 feet; running thence North 3 degrees 4 minutes 3 seconds East 94.71 feet; running thence North 12 degrees 25 minutes 46 second East 109.90 feet; running thence South 89 degrees 36 minutes 31 seconds East 476.91 feet; running thence South 0 degrees 7 minutes 17 seconds West 429.48 feet to **TRUE POINT OF BEGINNING.**

IN THE UNITED STATES BANKRUPTCY COURT
NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

IN RE:

ATLANTA GREENSPACE INITIATIVE,
LLC,

         Debtor.

CASE NO.: 11-66826-JRS

CHAPTER 11

**CERTIFICATE OF SERVICE**

I, Ron C. Bingham, II, of the firm of Stites & Harbison, PLLC, 303 Peachtree Street,
N.E., 2800 SunTrust Plaza, Atlanta, Georgia 30308, certify:

That I am, and at all times hereinafter mentioned, was more than 18 years of age; and

That I served a copy of the Motion to Dismiss Chapter 11 Case for Cause and Bad Faith
Pursuant to 11 U.S.C. § 1112 and Notice of Hearing via First Class U.S. Mail in the above-styled
case as follows:

| | |
|---|---|
| Atlanta Greenspace Initiative, LLC<br>699 11th Street, Suite 100<br>Atlanta, GA 30318 | Paul Reece Marr<br>Paul Reece Marr, P.C.<br>300 Galleria Parkway, N.W.<br>Suite 960<br>Atlanta, GA 30339 |
| Thomas Wayne Dworschak<br>Office of the U. S. Trustee<br>Room 362<br>75 Spring Street, SW<br>Atlanta, GA 30303 | Fulton County Tax Commissioner<br>141 Pryor Street, SW<br>Room 1111<br>Atlanta, Georgia 30303 |
| Fields Howell, et al<br>Attn: Paul Fields, Jr.<br>191 Peachtree Street, NE, Suite 4600<br>Atlanta, Georgia 30303 | |

250353:2:ATLANTA

I CERTIFY UNDER PENALTY OF PERJURY THAT THE FOREGOING IS TRUE AND CORRECT.

Executed on **August 19, 2011.**

/s/ Ron C. Bingham, II
RON C. BINGHAM, II
Georgia State Bar No. 057240

For the Firm of
STITES & HARBISON, PLLC
303 Peachtree Street, N.E.
2800 SunTrust Plaza
Atlanta, Georgia  30308
(404) 739-8800 – Telephone
(404) 739-8870 – Facsimile
rbingham@stites.com
Attorneys for CF Southeast, LLC, Successor
in Interest to United Community Bank

250353:2:ATLANTA